Ronald NELSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0207–CR–523.

Court of Appeals of Indiana.

July 31, 2003.

Janice L. Stevens, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Ronald Nelson appeals his convictions for Conspiracy to Commit Dealing in Cocaine, as a Class A felony, Dealing in Cocaine, as a Class A felony, and his adjudication as an Habitual Offender following a jury trial. He presents the following issues for our review:

1. Whether the trial court abused its discretion when it restricted the scope of his closing argument.
2. Whether the trial court abused its discretion and violated Nelson's constitutional rights when it restricted his cross-examination of an expert witness for the State.
3. Whether the trial court abused its discretion when it sentenced him.

We affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

On March 12, 2001, Indianapolis Police Detective Mark Campbell executed an undercover drug buy in a near-northside neighborhood in Indianapolis. Detective Campbell approached a man later identified as Nelson and asked whether he could buy twenty dollars' worth of crack cocaine. Nelson replied, "Come on," and got into Detective Campbell's car. Nelson instructed Detective Campbell to drive to a house near 30th Street and Park Avenue, and Nelson knocked on the door at the house, but got no response. Nelson got back into the car and told Detective Campbell to drive to an alley between College Avenue and Broadway Street near 30th Street.

There, Detective Campbell parked his car, and both he and Nelson got out of the car. While Detective Campbell looked on, Nelson approached a man later identified as Steve Evans standing in the alley. After a short discussion, Nelson got back into Detective Campbell's car and instructed him to follow Evans, who was walking down the sidewalk on 31st Street. Nelson finally told Detective Campbell to park his car near 30th Street and Park Avenue, where Nelson got out of the car and met with Evans between two houses. Detective Campbell observed Evans place some-thing in Nelson's hand. When Nelson returned to the car, he handed Detective Campbell a rock of crack cocaine, and Detective Campbell gave Nelson a $20 bill. Nelson wadded up the bill and placed it in his mouth. During the entire transaction, Detective Campbell was wearing a wire that enabled him to record his conversations with Nelson. After the buy was completed, uniformed police officers arrested Nelson and Evans.

The State charged Nelson with conspiracy to commit dealing in cocaine, dealing in cocaine, and possession of cocaine. Because the transaction occurred within 1,000 feet of a public park, the first two counts were charged as Class A felonies, and the possession count was charged as a Class B felony. A jury found Nelson guilty as charged, but the trial court only entered judgment of conviction on the conspiracy and dealing verdicts. The jury also adjudicated Nelson to be an habitual offender. The trial court sentenced Nelson to consecutive sentences of thirty years on each count, and the court enhanced the dealing conviction by an additional thirty years under the habitual offender statute, for a total executed term of ninety years. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Closing Argument

Nelson first contends that the trial court abused its discretion when it restricted the scope of his closing argument. It is well settled that the proper scope of final argument is within the trial court's sound discretion. *Taylor v. State*, 457 N.E.2d 594, 599 (Ind.Ct.App.1983). On appeal, we will not find an abuse of discretion unless the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* In seeking reversal of a conviction, however,

it is incumbent upon the appellant to establish that the trial court's abuse of discretion was "clearly prejudicial" to his rights. *See id.; Rouster v. State,* 600 N.E.2d 1342, 1347 (Ind.1992). Moreover, any abuse of discretion in restricting the scope of closing argument is subject to harmless error analysis. *See Hartford Steam Boiler Insp. & Ins. v. White,* 775 N.E.2d 1128, 1141 (Ind.Ct.App.2002) (noting any error in excluding certain comments from defendant's closing argument subject to harmless error analysis), *trans. denied.*

Nelson thoroughly cross-examined two expert witnesses for the State, Timothy Spears, a forensic chemist, and Brent Kintner, a park ranger for the Indianapolis Parks Department. Spears testified that the substance Nelson sold to Detective Campbell was crack cocaine, and Kintner testified that he measured a distance of 921 feet from where Detective Campbell parked his car at the time of the drug buy to a nearby public park. On cross-examination, Nelson questioned Spears about blind testing of his results by outside agencies, possible contamination during the testing process, and calibration of the machines he used to test the cocaine. Nelson also questioned Kintner about calibration of the measuring wheel he used in his measurement. But Nelson did not call an expert witness or present his own evidence to contradict Spears' and Kintner's testimony.

During a recess that followed those cross-examinations, the trial court stated to Nelson as follows:

> THE COURT: I would just say for the record just for all the parties['] edification that [Nelson] was a very interesting cross examination [sic] of the Chemist, but I will tell you that *you will not be allowed to argue that the test[s] are flawed and that the test[s]*
>
> *are not to be relied upon and if you do so I will instruct the jury that you are incorrect.*
>
> [NELSON]: Why?
>
> THE COURT: Because the test that he, the way he testified was that he started out with a graduated test of scale, that he started out with a simple test that was color that he then went on to another confirmatory test and then he went on to another confirmatory and then the final confirmatory test was done with an object that was standardized when it came from the factory that it was tuning fork calibrated everyday, that he ran his samples and then blank samples and that *I find that his testimony does not give rise to allow you to make an argument that the jury may not rely upon that information and I am making that finding and I will just tell you that.*
>
> [NELSON]: I would like to make my record that we clearly established that there is absolutely no quality control . . .
>
> THE COURT: No you didn't, you and your opinion did.
>
> [NELSON]: May I make my . . .
>
> THE COURT: No you may not because you made your record on what you questioned him on.
>
> [NELSON]: Now I'm being prevented to make an argument to the jury which I believe denies due process and due course of law to my client, I'd like to make a record . . .
>
> THE COURT: No, you made your record on your testimony and your cross examination, you laid it all out and I'm saying that based upon that I will not allow you to make that argument. I will also tell you that *the case law says, calibrating a wheel by a cloth tape is per se [sic] makes that reliable; therefore you will also not be*

*allowed to argue that the tape measurements are wrong* and because of what two and a half or three percent error possibly maybe on the tape, eight percent error on the tape, you will [not] be allowed to make that argument either, because the case law is clear that when they calibrate it per a set instrument that being a tape, cases are very clear on that. I've been down this road way many times and so I'm just telling, I'm just trying to let you understand that that is not going to be allowed to happen.

(Emphases added).

██ It is proper for counsel to argue both law and facts in his closing statement, including any argument as to position or conclusions based on the attorney's analysis of the evidence. *Taylor*, 457 N.E.2d at 599. Here, Nelson's questions on cross-examination were designed to establish doubts as to the reliability of the expert witnesses' testing methods. Indeed, Nelson's defense rested largely on his theory that the testing was unreliable. But the trial court sua sponte instructed Nelson that he could not assert that theory in his closing argument. In support of that ruling, the trial court stated that "the case law says calibrating a wheel by a cloth tape is per se [sic] makes that reliable. . . ." The trial court also stated that based on Spears' testimony regarding his testing methods, the court "[found] that his testimony does not give rise to allow you to make an argument that the jury may not rely upon that information. . . ."

We are unaware of any case law that supports the trial court's conclusion that distances measured with a measuring wheel are "per se" *reliable.* Instead, in addressing the *admissibility* of evidence

based on the use of a measuring wheel, our courts have held that "the State is only required to show that the measuring device was accurate and was operated correctly in order to allow the admission of the distance into evidence." *See Charley v. State*, 651 N.E.2d 300, 303 (Ind.Ct.App. 1995). In other words, because the use of a measuring wheel is not "scientifically complex," expert testimony is not required to lay an adequate foundation regarding the reliability of the measuring wheel. *See id.; see also McGrew v. State*, 682 N.E.2d 1289 (Ind.1997) (noting distinction between complex scientific principles involved in some reliability analyses and "matter[s] of the observations of persons with specialized knowledge"). Here, the trial court has confused reliability as it pertains to admissibility with reliability as it pertains to an ultimate issue of fact.

██ Indeed, it is within the exclusive province of the jury to determine the credibility of expert witnesses' testimony. Thus, the trial court's declaration that the tests performed by Spears and Kintner were per se reliable is unfounded.[1] Because the trial court's stated basis for limiting Nelson's closing argument is erroneous as a matter of law, we conclude that the trial court abused its discretion when it prohibited Nelson from commenting on the tests' reliability in his closing argument.

Still, Nelson has not demonstrated that he was clearly prejudiced as a result of that abuse of discretion. Nelson conducted extensive cross-examinations of both Spears and Kintner, which established his theory that their testing was flawed. And in his closing argument, Nelson stated, without objection, "So after I sit down, . . . don't accept excuses for poor evidence,

1. Of course, the trial court is still the "gatekeeper" responsible for determining the reliability of scientific evidence for purposes of admissibility. *See* Ind. Evidence Rule 702. But that is not the issue here.

*poorly tested evidence,* poorly recorded evidence, poorly remembered evidence." (Emphasis added).

Finally, given the eyewitness testimony of Detective Campbell and the arresting officers, we cannot say that the jury would have believed Nelson's theory of defense if he had reiterated it in his closing argument. Nelson has not demonstrated that the trial court's abuse of discretion warrants reversal of his convictions. *See Hartford Steam Boiler Insp. & Ins.,* 775 N.E.2d at 1141 (applying harmless error analysis to restriction on closing argument).

### Issue Two: Cross-examination

 Nelson next contends that the trial court abused its discretion and violated his constitutional rights when it restricted his cross-examination of one of the State's expert witnesses during the habitual offender phase of his trial. The right to cross-examine witnesses is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Indiana Constitution. *Smith v. State,* 721 N.E.2d 213, 218–19 (Ind.1999). It is one of the fundamental rights of our criminal justice system. *Id.* at 219. To be sure, this right is subject to reasonable limitations placed at the discretion of the trial judge. *Id.* Trial judges retain wide latitude to impose reasonable limits based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. *Id.*

 It is also true that violations of the right to cross-examine are subject to harmless error analysis. *Id.* To determine whether an error is harmless, courts look to several factors, including the strength of the prosecution's case, the importance of the witness' testimony, whether the testimony was corroborated, the cross-examination that did occur, and whether the witness' testimony was repetitive. *Id.*

During the habitual offender phase of the trial, Nelson cross-examined the State's fingerprint expert, Zureika Fuller, regarding her training and experience in the field. But the trial court sustained the State's objections to several of Nelson's questions [2] and admonished Nelson's counsel for "badgering" Fuller. Finally, when Nelson began to question Fuller regarding her knowledge of a certain case, the trial court sustained the State's objection and denied Nelson's request to make an offer of proof.[3]

 We agree that the trial court was unduly restrictive of the cross-examination here. Indeed, it is error for a trial court to deny a party's attempt to make an offer of proof. An offer of proof consists of three parts: (1) the substance of the evidence, (2) an explanation of its relevance, and (3) the proposed grounds for its admissibility. *See Roach v. State,* 695 N.E.2d 934, 939 (Ind.1998). We cannot very well require trial counsel to make an

---

**2.** Those questions included references to whether "[her] mistakes [had ever] been caught by anybody outside IPD," and whether she subscribes to any professional publications.

**3.** During the habitual phase of Nelson's trial, the following exchange occurred as Nelson's counsel cross-examined Fuller:

[Nelson's counsel]. Are you familiar with the case the United States versus Carlos ...

[Prosecutor]: Judge, I'm going to object as to him referring to ...

**THE COURT:** Sustained.

[Nelson's counsel]: We'd like to make an offer to prove after ...

**THE COURT:** No.

[Nelson's counsel]: I'm being prevented from making an offer of proof?

**THE COURT:** Yes.

[Nelson's counsel]: Thank you.

offer of proof to preserve error on appeal, while at the same time we allow the trial court to deny counsel the opportunity to make such a record. As we noted in *Arhelger v. State*, 714 N.E.2d 659, 664 (Ind. Ct.App.1999),

> [a]n offer to prove is the method by which counsel places before the trial court (and ultimately the reviewing court) the evidence he or she wishes to present, to allow the court to determine the relevancy and admissibility of the proposed testimony. Ind. Evidence Rule 103(a)(2) provides that "[e]rror may not be predicated upon a ruling ... which excludes evidence unless a substantial right of the party is affected, and ... the substance of the evidence was made known to the court by a proper offer of proof, or was apparent from the context within which questions were asked."

* * *

Our supreme court has also held that the purpose of an offer to prove is to preserve for appeal the trial court's allegedly erroneous exclusion of evidence. We note that this view of the purpose of an offer to prove is in keeping with the traditional trial practice of waiting until an objection has been sustained before tendering an offer to prove. However, we find that the offer to prove can also aid the trial court in ruling on the objection.

(Citations and quotation marks omitted; final alteration in *Arhelger*).

We hold that a party has a right to make an offer of proof. As the Missouri Court of Appeals has stated:

> if a trial court can arbitrarily deny to counsel the right to dictate into the record their [sic] offer of proof, he can prevent any consideration upon appeal as to the correctness of his own ruling as

to the exclusion of certain evidence. It is obvious that this cannot be the law. *Bextermueller v. Busken*, 376 S.W.2d 621, 630 (Mo.Ct.App.1964). Here, the trial court's refusal to allow Nelson to make an offer of proof rendered its ruling on the admissibility of Fuller's excluded testimony unreviewable. We hold that it is reversible error for a trial court to deny a party the opportunity to explain the substance, relevance, and admissibility of excluded evidence with an offer of proof.

But this case presents a unique set of circumstances which vitiates the error. Nelson has not demonstrated that Fuller's testimony on direct or cross-examination was probative to the habitual phase. *See Smith*, 721 N.E.2d at 219. During the guilt phase of the trial, Nelson testified that he had been convicted twice of auto theft/receiving stolen auto parts, once in 1997, and a second time in 1998. And the State moved to incorporate evidence from the guilt phase of the trial into the habitual phase. In addition, during the habitual phase, the State introduced into evidence documentation that Nelson had been arrested, convicted, and sentenced for dealing in a sawed-off shotgun, a Class D felony, in 1996; arrested, convicted, and sentenced for auto theft/receiving stolen auto parts, as a Class D felony, in 1997; and arrested in 1998 and convicted and sentenced for auto theft/receiving stolen auto parts, as a Class D felony, in 1999. That documentary evidence, combined with Nelson's admission that he had two prior convictions for auto theft/receiving stolen auto parts, is sufficient, without more, to support the jury's determination that Nelson was an habitual offender. *See Straub v. State*, 567 N.E.2d 87, 93 (Ind. 1991) (noting fingerprints and/or photographs not only means to prove defendant's identity in habitual phase; circumstantial evidence that defendant is same person named in documentary evidence of

prior felonies is sufficient to prove identity).

Indeed, Nelson makes no contention on appeal that the State presented insufficient evidence to prove his habitual offender status. And Fuller's testimony was not necessary to prove or disprove Nelson's habitual offender status. Therefore, even though the trial court abused its discretion when it limited Nelson's cross-examination and denied his request to make an offer of proof, the error was harmless because Fuller's testimony was mere surplusage.

**Issue Three: Sentence**

 Finally, Nelson contends that the trial court abused its discretion when it sentenced him to an executed term of ninety years. The determination of the appropriate sentence rests within the discretion of the trial court, and we will not reverse the trial court's determination absent a showing of manifest abuse of that discretion. *Bacher v. State,* 722 N.E.2d 799, 801 (Ind.2000). The trial court's wide discretion extends to determining whether to increase the presumptive sentence, to impose consecutive sentences on multiple convictions, or both. *Singer v. State,* 674 N.E.2d 11, 13 (Ind.Ct.App.1996). If the sentence imposed is authorized by statute, we will not revise or set aside the sentence unless it is inappropriate in light of the nature of the offense and the character of the offender.[4] Ind. Appellate Rule 7(B); *McCann v. State,* 749 N.E.2d 1116, 1121 (Ind.2001).

The presumptive sentence for a Class A felony is thirty years, and the trial court is permitted to add up to twenty years for aggravating circumstances. *See* Ind.Code § 35–50–2–4. In addition, where a defendant is adjudicated an habitual offender, Indiana Code Section 35–50–2–8(e) provides that a trial court is permitted to enhance a felony conviction by a term of years that is three times the presumptive sentence for an underlying offense, not to exceed thirty years. Here, the trial court cited Nelson's extensive criminal history in imposing consecutive thirty year sentences, with the sentence for the dealing conviction enhanced by thirty years.

While his sentence is authorized by statute, we agree with Nelson that it is inappropriate in light of his character and the nature of the offense. Nelson sold less than one gram of cocaine to an undercover officer. Nelson was not armed at the time, and he was cooperative with police during his arrest. While his criminal history is extensive, we note that he has neither been charged with nor convicted of any crimes of violence[5] as an adult, and his most recent true finding involving a violent act was a battery offense in 1993, at the age of fourteen.[6] In addition, we note that the pre-sentence investigation report indicates that Nelson "believes that he has a substance abuse problem."

More importantly, under the facts of this case, we do not condone the imposition of consecutive sentences for Nelson's conspir-

---

**4.** On July 19, 2002, our supreme court amended Appellate Rule 7(B) effective January 1, 2003. The rule is directed to the reviewing court and sets forth the standard for that review. Appellate review occurs as of the date the decision or opinion is handed down. Accordingly, although the sentence here was imposed prior to January 1, 2003, we have reviewed the issue as of this date and the "inappropriate" test is therefore applied.

**5.** *See* Ind.Code § 35–50–1–2 (defining crimes of violence).

**6.** Nelson's criminal history consists of eleven juvenile arrests resulting in seven true findings and seventeen adult arrests resulting in ten convictions. Nelson committed the following violent crimes, resulting in true findings, between 1991 and 1993, when he was twelve, thirteen, and fourteen years old: two shootings, one resulting in a true finding of criminal recklessness and the other a true finding of battery; and three batteries. Again, Nelson has not been convicted of any violent crimes as an adult.

acy and dealing convictions. In *Saunders v. State*, 584 N.E.2d 1087, 1089 (Ind.1992), our supreme court reversed a defendant's 140–year sentence, holding "it is the trial court's decision to order that the [three] dealing counts run consecutive to the *closely related* [three] conspiracy counts that renders appellant's sentence manifestly unreasonable." (Emphasis added). The court remanded the case to the trial court and instructed the court to run the defendant's sentences concurrently, for a total executed sentence of seventy years.

Here, Nelson's conspiracy conviction is based on the fact that he did not have cocaine to sell, but had to get cocaine from Evans to sell to Detective Campbell. Following the reasoning in *Saunders*, we conclude that Nelson's convictions are "closely related" and do not warrant the imposition of consecutive sentences under the circumstances. Indeed, while the conspiracy and dealing offenses were distinct crimes, they were part of a single, uninterrupted transaction. We hold that Nelson's sentence is inappropriate in light of the nature of the offense and the character of the offender. Accordingly, we remand this cause to the trial court with instructions to modify Nelson's sentencing order as follows: thirty years for each conviction, to be served concurrently, and an habitual offender sentence enhancement of thirty years on Nelson's dealing conviction, for a total executed term of sixty years.

Affirmed in part, reversed in part, and remanded with instructions.[7]

BROOK, C.J., and BAILEY, J., concur.

7. Because we remand for resentencing, we need not address the fact that Nelson's ninety-year sentence violated Indiana Code Section 35–50–1–2(c), which provides that the consecutive sentences for two Class A felonies cannot exceed the presumptive sentence for the next highest class of felony.