**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**THOMAS W. VANES**
Office of the Public Defender
Appellant Division
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PRINCE HARRIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1205-CR-232 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT, CRIMINAL DIVISION 2
The Honorable Clarence D. Murray, Judge
Cause No. 45G02-1002-MR-2

**February 7, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**Baker, Judge**

The appellant in this case, Prince Harris, was charged with and convicted of murder and robbery. At trial, the prosecutor commented that one of the State's witnesses had previously pleaded guilty to two counts of theft, a class D felony. When Harris's counsel sought to question the witness further about the details of the plea agreement because he had been initially charged with a greater felony, the trial court precluded counsel from doing so. The trial court also did not permit Harris's counsel to make an offer of proof with regard to a witness's involvement in gang activity.

We agree with the trial court's determination that the State did not "open the door" to additional questioning about the plea agreement. We further conclude that the trial court did not commit reversible error when it denied Harris's request to make an offer of proof regarding a witness's involvement in gang activity. Thus, we affirm the trial court's judgment.

FACTS

Michael Roberts routinely sold marijuana to Harris, who is also a drug dealer. Harris also sold drugs to Roberts on occasion. These transactions routinely occurred in Gary.

On December 3, 2009, Roberts was drinking and smoking marijuana with his friend, Cody Hunt. Harris called Roberts and stated that he had some "hydro weed" for sale and asked if Roberts was interested. Tr. p. 64.

"Hydro weed" is an "exotic marijuana" believed to be a "higher grade" because it allows someone to become "higher faster than regular marijuana." Id. Roberts and Hunt left to meet Harris outside the home of Roberts's mother.

Upon arrival, Roberts noticed Harris's vehicle and approached the passenger side. Another man was with Harris. Harris stated that the marijuana was in the trunk, so Roberts moved toward the rear of the vehicle. Roberts then saw Harris step out of the car carrying an AK-47 rifle. Harris pointed the gun at Roberts and demanded money. Roberts stepped back and said, "[H]ey, man, just take it. You can have it, man, don't kill me for no couple of dollars, you can take it, have it." Id. at 66. Roberts told Harris that the money was in the vehicle and walked toward the car. Once there, Roberts told Hunt that "he's robbing me, get out of here."

Roberts returned to where Harris was waiting. Harris told another individual who was with him to grab Roberts's chain necklace and money. The man took the chain from Roberts's neck and removed $60 from Roberts's pocket. Roberts then stated, "[M]an, you could have it, man, just take it, don't kill me." Id. at 67.

Another vehicle drove up and temporarily distracted Harris and his companion, and Roberts started to flee toward his mother's home. Roberts heard someone yell, "[H]e's running," and also heard gunshots. Tr. p. 68. While reaching for the front door, Roberts was shot in the hip and heard more gunfire.

The police were called and upon their arrival, the officers saw Hunt—who had also been shot—on the ground suffering from multiple gunshot wounds and screaming

3

for help. Hunt was transported to the hospital but died of his injuries a short time later. The police then located Roberts inside the house and saw shattered glass at the front door.

Several police officers spoke with Roberts at the hospital, and he gave a name and description of the individual who had shot them. Roberts described the man as being five feet nine inches tall, having fair-skin with a tear drop under his eye, by the name of "Prince." Tr. p. 231. Several weeks later, Roberts was shown a photo array and identified the photograph of Harris as the man who had fired the shots.

Harris was charged with Hunt's murder and the robbery and injuries that Roberts sustained. Prior to trial, the State filed two motions in limine that sought to prevent questions or testimony regarding Hunt's tattoos or markings that might reference gang affiliation and any specifics surrounding Roberts's criminal history.

After hearing argument, the trial court stated that tattoos do not necessarily signify gang affiliation, and granted the first motion in limine. The trial court then ruled that but for Roberts's two theft convictions, no other issue regarding his criminal history was admissible.

At some point during the jury trial that commenced on January 9, 2012, Roberts was asked during cross-examination whether he had ever been in a street gang. The State objected, and the trial court sustained the objection, determining that the issue of Roberts's possible gang activity was not relevant. Outside the jury's presence, Harris's counsel explained that he was trying to avoid the order in limine by not mentioning tattoos. The trial court announced that it was "bothered" by such action because the

tattoo references were being excluded in light of insinuations about gang affiliation. However, counsel "asked this witness out of the blue about whether he had been in a gang." Id. at 115. Counsel asked for permission to make a "quick offer of proof" with regard to the line of questioning that he desired to use about "any prior gang affiliations." Id. at 114. The trial court stated that it would not allow the offer of proof because gang affiliation was not relevant. The trial court stated that "if it becomes relevant later, then I'll permit you to do it." Id.

When Roberts was questioned on re-direct examination, the State elicited testimony that he had two prior theft convictions. The prosecutor asked, and Roberts confirmed, whether one of the offenses involved the theft of scrap metal. The prosecutor then asked Roberts to relate the sentence that was imposed on that conviction, and Roberts explained that there was a plea agreement and that he had received probation.

Roberts also admitted that he had not completed that probation successfully and had to serve additional time. The prosecutor then asked about the sentence for his second theft conviction, and Roberts explained that he again received probation, but he had also violated probation in that case. The prosecutor then asked if the theft convictions were both class D felonies, "the lowest felony." Tr. p. 130. Roberts replied, "Yes." Id.

Harris's counsel asked the trial court to hold that the State had "opened the door-" such that he should be permitted to inquire into the specifics of the plea agreements. Tr. p. 136. However, the trial court refused to do so. Counsel then asked for permission to make an offer of proof, which the trial court allowed. Counsel argued that had he been

5

permitted to more fully cross-examine Roberts, he would have elicited information that the plea agreements had resulted in the dismissal of other charges, including class C felony burglary in the first case. Id. at 136-37. Counsel also argued that the second theft conviction also involved a conviction for class D felony resisting law enforcement and a dismissal of charges of class D felony auto theft and class D felony possession of cocaine.

At the conclusion of the jury trial, Harris was found guilty of five charges. On April 18, 2012, Harris was sentenced for murder and robbery only. The trial court imposed an aggregate sentence of 100 years. Harris now appeals.

DISCUSSION AND DECISION

I. Cross-Examination; Plea Agreement

Harris argues that the trial court improperly limited his right to cross-examine Roberts about his guilty pleas to theft. Harris maintains that the State "opened the door" to such questioning and that he was barred from countering "the incomplete impression left by the State regarding [Roberts's] criminal history by introducing the plea agreements that led to those convictions." Appellant's Br. p. 4.

We initially observe that the admission or exclusion of evidence rests within the sound discretion of the trial court and is reviewed on appeal only for an abuse of that discretion. Goodner v. State, 685 N.E.2d 1058, 1060 (Ind. 1997). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. Smith v. State, 754 N.E.2d 502, 504 (Ind. 2001). The trial

6

court's decision will not be disturbed absent a requisite showing of abuse. <u>Goodner</u>, 685 N.E.2d at 1060.

Although prior convictions are typically inadmissible at trial, Indiana Evidence Rule 609 provides a procedure for admitting evidence of certain convictions for the purposes of impeaching a witness. This general rule is as follows:

> (a) For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime or an attempt of a crime shall be admitted but only if the crime committed or attempted is (1) murder, treason, rape, robbery, kidnapping, burglary, arson, criminal confinement or perjury; or (2) a crime involving dishonesty or false statement.

Ind. Evidence Rule 609(a).

When a prior conviction is introduced for impeachment purposes, the details of the conviction may not be explored. <u>Oliver v. State</u>, 755 N.E.2d 582, 586 (Ind. 2001). That is, a witness can only be questioned about having been previously convicted of a particular crime not the circumstances surrounding the conviction. <u>Id.</u> If, however, a party touches upon a subject during direct examination that leaves the jury with a false or misleading impression of the facts involved, such questions may serve to open the door for the cross-examining party to explore the subject fully, even if the matter discussed on cross-examination would have otherwise been inadmissible. <u>Id.</u>

In this case, we agree with the trial court's conclusion that the State did not open the door to further questioning about the plea agreements. As noted above, Roberts had accumulated two prior theft convictions. In accordance with Evidence Rule 609, those

convictions were admissible and relevant with regard to Roberts's credibility as a witness. Harris incorrectly asserts that the State opened the door to otherwise inadmissible exploration of the terms of the agreements when Harris volunteered that the convictions were reached as part of plea agreements. However, Harris has made no showing that the jury was misled by either learning that there were plea agreements or by the prosecutor's comments that these convictions were class D felonies, the "lowest felony." Tr. p. 130.

Although Roberts may have been initially charged with a higher felony—a class C felony burglary in the first case—he was never convicted of that offense. Also, we note that Evidence Rule 609 speaks of convictions, not dismissed charges or crimes that have never been proven or reduced to convictions. Therefore, Roberts's initial charges in his criminal cases are not relevant for Evidence Rule 609 purposes. Indeed, the only evidence that was relevant for Evidence Rule 609 purposes was that Roberts was twice convicted of theft. See Rowe v. State, 704 N.E.2d 1104, 1108 (Ind. Ct. App. 1999) (observing that convictions for burglary and theft would have been admissible under Evidence Rule 609 as crimes that involve dishonesty and reflect upon a witness's credibility for truth and veracity).

Harris's reliance on Skaggs v. State, 260 Ind. 180, 293 N.E.2d 781 (1973), in support of his position is misplaced. In Skaggs, the State was permitted to delve into the underlying facts of the defendant's prior convictions. Id. at 186, 293 N.E.2d at 785. Skaggs admitted the bare nature of the convictions during cross-examination. Id. During

re-direct examination, and pursuant to counsel's questioning, Skaggs admitted that he had pleaded guilty to the earlier crime because he was guilty of that crime but was <u>not</u> guilty of the charge for which he was being tried. <u>Id.</u> Skaggs's admission would have left the jury with the belief that Skaggs was willing to admit to charges for crimes that he actually committed but would take other charges to trial. As a result, the trial court properly permitted the State to bring out the fact that in at least one case Skaggs pleaded guilty to a lesser included offense, suggesting that, at least on one occasion, he had other "agendas" that would lead him to accept a guilty plea. <u>Id.</u> at 187, 293 N.E.2d at 785.

Unlike the circumstances in <u>Skaggs</u>, there was no such confusion or misperception in the present case. Indeed, Roberts admitted that he had two convictions for theft and that he had pleaded guilty to those charges. Tr. p. 128. And the prosecutor correctly noted that these crimes were class D felonies, which is the "lowest felony." <u>Id.</u> at 130. We cannot say that the prosecutor's comments left the jury with any misperception about what crimes Roberts had actually committed. The fact that the State may have initially charged Roberts with something greater does not mean that Roberts had actually <u>committed</u> that higher offense. Any greater charge remains unproven. Therefore, advising the jury that Roberts had also been charged with a class C felony burglary would not have served to alleviate any purported jury confusion and in fact may have generated some confusion. Therefore, we conclude that the trial court properly prohibited Harris's counsel from conducting additional questioning about Roberts's prior convictions.

## II. Cross-Examination; Gang Activity

Harris next argues that his convictions must be reversed because the trial court did not permit him to make an offer of proof regarding a line of inquiry into Roberts's alleged gang affiliation. Harris argues that the trial court erred when it determined that Roberts's involvement in gang activity was irrelevant in this case.

An "offer of proof" serves two purposes. First, it conveys the point of a witness's testimony so the trial judge may reconsider an evidentiary ruling. State v. Wilson, 836 N.E.2d 407, 409 (Ind. 2005). An offer of proof also preserves the issue for review by the appellate court. Id. To fulfill these purposes, an offer of proof must be specific enough to permit the trial court to determine whether evidence is admissible and to allow us to review the correctness of the trial court's ruling as well as determining the prejudicial result of the ruling. Id. If, however, the defendant makes no offer of proof, no issue is preserved and the alleged issue is unavailable to be considered on appeal. Winn v. State, 748 N.E.2d 342, 359 (Ind. 2001).

In this case, Harris attempted to make an offer of proof concerning gang affiliation when cross-examining Roberts after Harris had violated an order in limine by bringing up such alleged affiliation. Tr. p. 114. The trial court then denied Harris the opportunity to make the offer of proof. Id. The court, however, explained that Harris could do so at a later time if the issue became relevant. Id.

We agree with the State's acknowledgment that the trial court's refusal to permit Harris to make an offer of proof was error. More particularly, we have observed that trial

courts must permit a party to make an offer of proof.  Nelson v. State, 792 N.E.2d 588, 594 (Ind. Ct. App. 2003).  The remedy, however, is not necessarily a reversal. Accordingly, when the trial court refuses an offer of proof, we will review for error based on the totality of the record as well as any explanation which the appellant otherwise could have presented to the trial court.

We find Nelson instructive because reversal did not result even in the face of a refused offer of proof.  In that case, Nelson sought to cross-examine a fingerprint expert regarding her training and experience in the field.  792 N.E.2d at 594.  The trial court viewed the questions as "badgering" and limited the extent of cross-examination.  Id. When counsel attempted to question the expert about her knowledge of a certain case, the trial court again sustained the State's objection and denied counsel's request to make an offer of proof.  Id.  Although we determined that the trial court erred in refusing the offer of proof, we found that it was harmless error because that witness's testimony, even if she had been questioned as Nelson sought to question her, would not have produced a different result.  Id. at 595.

Here, defense counsel appears to have had no basis for inquiring about Roberts's involvement in gang activity.[1]  Harris has also made no claim on appeal that there was

---

[1] Counsel directly questioned Roberts about whether he had ever been in a "street gang" and Roberts, before the State could object, admitted that he had been when he was a teenager. Tr. p. 112.  The State, however, objected, and the trial court sustained the objection, and instructed the jury to disregard the question and answer.  Id.

11

any basis for such questions. Indeed, Harris has admitted to the contrary when he states in his appellate brief that "[i]t cannot be known how precisely where or how far Harris intended to go with questions about Roberts's gang membership, or what he expected the answers to be." Appellant's Br. p. 8.

It is apparent that Harris's counsel may well have been on a "fishing expedition" when cross-examining Roberts. Such expeditions might be appropriate for discovery and pre-trial investigations, but cross-examination on issues without grounding in fact is inappropriate at trial. Tolliver v. State, 922 N.E.2d 1272, 1286 (Ind. Ct. App. 2010), trans. denied. In our view, this is particularly so when dealing with such prejudicial issues as gang affiliation. Harris has not presented us with any factual basis as to why he was compelled to question Roberts about gang involvement. Thus, as in Nelson, reversal is not warranted in this instance. As a result, Harris's claim fails.

The judgment of the trial court is affirmed.

RILEY, J., and BARNES, J., concur.