## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 09 2016, 8:16 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Glen E. Koch II
Boren, Oliver & Coffey, LLP
Martinsville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J. T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jerry Cross,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 9, 2016

Court of Appeals Case No.
55A01-1602-CR-316

Appeal from the Morgan Circuit Court.
The Honorable Matthew Hanson, Judge.
Cause No. 55C01-1407-F5-998

**Barteau, Senior Judge**

# Statement of the Case

Jerry Cross appeals from his convictions after a jury trial of one count of burglary,[1] as a Level 5 felony, one count of criminal mischief,[2] as a Class A misdemeanor, and Cross's stipulation to being an habitual offender. We affirm.

# Issues

Cross presents the following restated issues for our review:

I. Whether the trial court deprived Cross of his right to testify and present a defense by refusing to allow his counsel to ask follow-up questions after the jury asked Cross three questions; and

II. Whether the trial court committed instructional error by omitting the enhancing elements of resisting law enforcement with a vehicle and criminal mischief in an amount over $750.00.

# Facts and Procedural History

Mooresville Police Department officers David Schultz, Daniel Enkhorn, and Sergeant Kevin Julian, were all working when they received a dispatch at approximately 2:50 a.m. on July 2, 2014, reporting a burglary alarm at Poe's Cafeteria in Mooresville, Indiana. The alarm system at Poe's Cafeteria, which is located at State Road 67 and Hansel Parkway, notified the Mooresville Police

---

[1] Ind. Code § 35-43-2-1(1) (2014).

[2] Ind. Code § 35-43-1-2(a)(a) (2014).

Department automatically, and Mooresville Police then notified Mike Poe, the manager and owner.

[4]     Officer Schultz, who was working off-duty as a security officer for a private business, was nearby Poe's. He responded to the call in uniform and a marked police vehicle, using State Road 67, and turning onto Old State Road 67. He dimmed the lights of his vehicle, or "went dark," to keep his presence secret from the perpetrators. Tr. p. 187. Officer Schultz was driving southbound toward the Poe's Cafeteria parking lot when Officer Julian informed him that the suspects, who were driving a mini-van, had struck Officer Julian's vehicle. The mini-van was headed toward Officer Schultz's location. Officer Schultz activated his lights and attempted to stop the mini-van; however, he had to swerve to avoid a collision as the van passed him heading north. Officer Schultz turned his vehicle around and, while in pursuit of the van, observed that the people in the van were throwing objects out of the window. The driver of the van, later identified as Cross, attempted a sharp turn at a high rate of speed ultimately flipping the vehicle over into a ditch.

[5]     Officer Julian, whose vehicle suffered approximately $1,600.00 in damage from the collision with the van driven by Cross, helped to identify, locate, and photograph the items thrown from the van. He also took photographs of the interior and exterior of the van. Officer Enkhorn, who had also attempted to stop Cross's van after the collision with Officer Julian's vehicle, and who also had to stop his vehicle in order to avoid a collision with Cross's van, helped to

detain Cross and his passenger, once the van had come to a stop after flipping over.

[6] Cross's passenger was Kenneth Marcum. Both Cross and Marcum received emergency medical treatment but had not sustained any injuries. Officer Enkhorn interviewed Cross after apprehending him. At that time, Cross told the officer he did not drop off Marcum, his passenger. Cross, however, later testified at trial that he had dropped off Marcum, left and went to a gas station, returned, and found Marcum with a box in his possession.

[7] The State charged Cross with one count of Burglary as a Level 5 felony, one count of resisting law enforcement with a vehicle as a Level 6 felony, one count of criminal mischief resulting in destruction of property worth more than $750.00 as a Class A misdemeanor, one count of theft as a Class A misdemeanor, and one count of criminal mischief as a Class B misdemeanor. The State later added a separate allegation that Cross was an habitual offender.

[8] During his jury trial, Cross testified and was cross-examined. His trial counsel declined the opportunity to conduct redirect examination. At the conclusion of cross-examination, the trial court read three jury questions to Cross. After Cross answered the questions, his trial counsel asked the trial court if he could ask follow-up questions. The trial court stated that there would be no follow-up questions on the jury questions. Cross's counsel did not object, made no offer to prove, and rested. The jury found Cross guilty as charged and Cross stipulated to his status as an habitual offender.

The trial court entered judgment of conviction on one count of Burglary as a Level 5 felony and one count of criminal mischief as a Class A misdemeanor. The trial court sentenced Cross to 1800 days imprisonment with eighty days served and twenty days good time credit on count one. That sentence was enhanced by 720 days due to Cross's habitual offender status. The trial court ordered Cross to pay restitution of $1,591.54 on the criminal mischief conviction. Cross now appeals.

# Discussion and Decision

## I. Follow-up Questions

Cross argues that the trial court committed fundamental error by refusing to allow him to ask follow-up questions to juror questions.

At the beginning of the trial, the trial court gave Preliminary Instruction 18, which reads as follows:

> Number 18, the law allows jurors to ask questions in a jury trial. After both parties are finished questioning the witness you may submit written questions to the court. The attorneys and I will review your question; if appropriate I will ask the witness your question. If the question is not appropriate under the law I will advise you of that fact.

Tr. p. 167.

Indiana Evidence Rule 614(d) provides for questioning of a witness by jurors. The rule reads as follows:

Questioning by Juror. A juror may be permitted to propound questions to a witness by submitting them in writing to the judge. The judge will decide whether to submit the questions to the witness for answer. The parties may object to the questions at the time proposed or at the next available opportunity when the jury is not present. Once the court has ruled upon the appropriateness of the written questions it must then rule upon the objections, if any, of the parties prior to submission of the questions to the witness.

Throughout the course of the trial, after there was no further cross-examination or redirect examination, the trial court asked the jury if there were any questions for the witness. During the State's case, there was only one juror question presented, and that question was asked of Officer Schultz. No request was made for follow-up questioning of that witness. During the defense's case, the only witness was Cross. The following exchange took place at trial after the State completed cross-examination and the defense indicated that there would be no redirect examination:

| | |
|---|---|
| THE COURT: | Alright ladies and gentlemen if you have any questions for this witness you can present those, looks like we have a few. Mr. Jones approach. Alright sir I'm going to read you uh, a couple questions no one else is going to ask you, sort of um, follow up uh, the first one is how long did he work there? So I'm assuming they mean at Poe's. |
| MR. CROSS: | How long did I work there? |
| THE COURT: | Correct. |
| MR. CROSS: | I worked there almost 2 years. |
| THE COURT: | 2 years? |

| | |
|---|---|
| MR. CROSS: | Yes, sir. |
| THE COURT: | Okay.  Next question is and I'm reading this as it's written so hang with me.  How many drinks, said beers in interview, did Kenneth Marcum have over the length of time leading to arrest? |
| MR. CROSS: | That's a hard one cause I'm not sure. |
| THE COURT: | Okay. |
| MR. CROSS: | I know he had a drink maybe a half a pint and maybe a beer or 2 within an hour and a half. |
| THE COURT: | Alright, second one, what type of alcohol if not beer, you said it was beer so I think you answered your question.  Alright.  Okay, thanks sir you may step down please watch your step when you're getting down.  Mr. Jones, other evidence from the State?  Or excuse me from the defense? |
| MR. JONES: | Judge if I could I did have a question on that uh. . . |
| THE COURT: | We don't follow up on those. |
| MR. JONES: | Okay. |
| THE COURT: | Nope.  Are there any other witnesses or evidence Mr. Jones? |
| MR. JONES: | No Your Honor the defense rests. |
| THE COURT: | Alright, Ms. Kester any rebuttal? |
| MS. KESTER: | No Judge. |

Tr. pp. 314-15.

[14]   Cross did not make a contemporaneous objection to the trial court's ruling and did not make an offer to prove what Cross's testimony would have been had the

additional questioning been permitted. The failure to object at trial waives the issue for appeal. *Delarosa v. State*, 938 N.E.2d 690, 694 (Ind. 2010). Review is permitted only on the extremely narrow grounds of fundamental error—error constituting a blatant violation of basic principles such that the resulting error denies the defendant fundamental due process. *Id.* The exception is available only in egregious circumstances. *Id.*

[15] Cross argues that the trial court's limitation on follow-up questioning after the jury questions violated his federal constitutional right to confront witnesses and violates his right to be heard and present a defense. We disagree.

[16] The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." The right of confrontation is made obligatory upon the states by the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 1067, 13 L. Ed. 2d 923 (1965). "The essential purpose of the Sixth Amendment right of confrontation is to ensure that the defendant has the opportunity to cross-examine the witnesses against him." *Howard v. State*, 853 N.E.2d 461, 465 (Ind. 2006).

[17] We also note, however, that trial judges retain wide latitude to impose reasonable limits on the right to cross-examination. *Nelson v. State*, 792 N.E.2d 588, 594 (Ind. Ct. App. 2003), *trans. denied*. Some of the concerns involved in making the decision whether to limit cross-examination include harassment,

prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. *Id.*

[18] A challenge to a trial court's limitation of cross-examination after jury questions was addressed in *Washington v. State*, 840 N.E.2d 873 (Ind. Ct. App. 2006), *trans. denied.* In *Washington*, the trial court refused to allow Washington's counsel to further cross-examine an officer testifying against Washington after the officer answered questions from the jury. Washington's counsel objected, and proffered the question she would have asked the officer. We affirmed the trial court's limitation of cross-examination finding no violation of Washington's rights under the Confrontation Clause of the Sixth Amendment. *Id.* at 887. We held in the alternative that even if the trial court's decision was erroneous, it amounted to harmless error. *Id.* at 887-88.

[19] In *Washington*, the challenge involved further cross-examination of a witness testifying against the defendant. In this appeal, Cross's counsel wanted to ask follow-up questions of Cross, who was not testifying against himself. Therefore, Sixth Amendment concerns are not implicated in this appeal.

[20] Additionally, of the three questions asked by the jury, one had already been answered in previous testimony; beer was what Cross's passenger had been drinking that evening. The other two questions were of equally minimal, if any, relevance to the elements of the crimes charged; 1) how long had Cross worked for Poe's Cafeteria, and, 2) how many drinks did Marcum consume.

Cross's defense was that he dropped off Marcum at Poe's and when he returned to pick him up, Marcum had the stolen property in his possession. Cross testified and was able to present this theory to the jury as guaranteed by article 1, section 13 of the Indiana Constitution. Thus, he was able to testify and be heard, present his defense theory to the jury, and was able to confront and cross-examine the witnesses testifying against him. The trial court did not commit fundamental error by limiting follow-up questions after the jury questions.[3]

## II. Instructional Error

Cross contends that the trial court committed fundamental error in the manner it instructed the jury. When a claim of instructional error is properly preserved, we review the trial court's decision for an abuse of discretion. *Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016). However, where, as here, a defendant does not preserve an alleged instructional defect for review, the objection is waived, and

---

[3] We are not asked to determine, nor do we do so, whether a trial court's general practice of prohibiting follow-up questions to any juror questions is an abuse of the trial court's discretion. Our research has revealed that of the states that permit juror questions, and where the practice has not been regulated by rule or statute beyond commending the issue to trial court discretion, the implementation of certain safeguards has been recommended, at least with respect to criminal cases. In *State v. Graves,* 907 P.2d 963, 967 (Mont. 1995), the Supreme Court of Montana listed the safeguards as follows:

> (1) the questions should be factual, not adversarial or argumentative, and should only be allowed to clarify information already presented; (2) the questions should be submitted to the court in writing; (3) counsel should be given an opportunity to object to the questions outside the presence of the jury; (4) the trial judge should read the questions to the witness; and (5) counsel should be allowed to ask follow-up questions.

A discussion of the recommendations of the Wisconsin Criminal Jury Instructions Committee can be found in *State v. Darcy N.K.*, 581 N.W.2d 567, 580 (Wis. Ct. App. 1998). A detailed history of the practice of juror questioning in the United States can be found in *State v. Doleszny*, 844 A.2d 773 (Vt. 2004).

we will reverse only in instances of fundamental error. *Id.* Precedent emphasizes the narrowness of this exception to the contemporaneous objection requirement, and requires the error to be a substantial blatant violation of basic principles, such that, if not corrected, would deny a defendant fundamental due process. *Id.* Relief will be provided in only the most egregious of circumstances making a fair trial impossible. *Id.*

[23] Cross argues that fundamental error occurred because the trial court did not include the enhancing elements of criminal mischief and resisting law enforcement when instructing the jury.

[24] The trial court read Preliminary Instruction 5 to the jury which included a reading of the charges against Cross. Appellant's App. p. 50; Tr. p. 158. That instruction included the language from the charging information that Cross, while operating a motor vehicle, knowingly fled from a law enforcement officer. The instruction also included the language from the charging information that without the consent of the Town of Mooresville, Cross recklessly damaged a police vehicle in an amount greater than $750.00. Although Preliminary Instructions 8 and 9 did not include the enhancing elements, but rather quoted from the statutes in effect at the time the offense occurred, Preliminary Instruction 4 informed the jury to consider the instructions as a whole.

[25] During final instructions, the trial court gave Final Instruction 2, which informed the jury to consider the instructions as a whole. Tr. pp. 358-59. Final

Instruction 4 set forth the language of the charging information filed against Cross, containing the pertinent enhancing elements. *Id.* at 360.

[26] The trial court's instructions, both preliminary and final, as a whole, informed the jury of the elements the State was required to prove beyond a reasonable doubt. Cross has not demonstrated instructional error such that he was denied fundamental due process.

## Conclusion

[27] In light of the foregoing, we affirm the trial court's judgment.

[28] Affirmed.

Kirsch, J., and Barnes, J., concur.