



FILED

May 28 2019, 2:51 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 19S-PC-328

## Anthony Bedolla,
*Appellant (Petitioner below),*

—v—

## State of Indiana,
*Appellee (Respondent below).*

Argued: January 17, 2019 | Decided: May 28, 2019

Appeal from the Marion Superior Court,
No. 49G02-0903-PC-34210
The Honorable Amy Barbar, Magistrate

On Petition to Transfer from the Indiana Court of Appeals,
No. 49A02-1712-PC-3004

**Opinion by Justice Goff**

Chief Justice Rush and Justice David concur.
Justice Massa concurs in result.
Justice Slaughter concurs in part, dissents in part with separate opinion.

**Goff, Justice.**

In what can only be characterized as a twist of fate, Anthony Bedolla found himself sharing a holding cell with the man who could help prove he had been wrongly convicted of murder. Securing the man's testimony and presenting it to the post-conviction court proved challenging for Bedolla's attorney for various reasons, some outside her control. After an unsuccessful deposition, yet with assurances from the witness that he would cooperate, Bedolla's counsel sought leave from the court to try again to get the testimony. But the post-conviction court refused to hear argument from Bedolla's attorney on this point, even denying her the opportunity to make an offer of proof. The court then ended discovery, closed the evidence, and demanded proposed findings and conclusions from the parties. When Bedolla's counsel attempted to make her case and develop a record for appeal, the court silenced her with threats of contempt.

Part of a judge's job is to listen. *In re Van Walters v. Bd. of Children's Guardians of Marion Cty.*, 132 Ind. 567, 571, 32 N.E. 568, 569 (1892) (stating judges must "**hear with deliberation**, act with impartiality, and decide upon the law and the evidence") (emphasis added). When a judge refuses to hear a party's offer to prove, she not only abdicates the duty to listen, but she calls into question the principle of fundamental fairness, which requires that parties, particularly those bearing the burden of proof, receive every reasonable opportunity to make their case. *Hirsch v. State*, 697 N.E.2d 37, 43 (Ind. 1998). Today we hold that a post-conviction court abuses its discretion when it denies a party's legitimate request to make an offer of proof.

## Factual and Procedural History

In the wee hours of March 8, 2009, Erick Espinoza was shot and killed in an Indianapolis nightclub's parking lot. Multiple witnesses placed Anthony Bedolla in the parking lot, but only one witness identified him as the killer. The State eventually charged Bedolla with murder and cocaine possession. Following a bench trial in February 2010, the court found

Bedolla guilty as charged and sentenced him to 45 years in prison. *See Bedolla v. State*, No. 49A02-1003-CR-368, 2011 WL 240152, at *1 (Ind. Ct. App. Jan. 20, 2011), *trans. denied*.

In October 2011, after exhausting direct appeals, Bedolla sought post-conviction relief. He twice amended his petition over the years before the court held an evidentiary hearing on January 11, 2017. After that hearing, while Bedolla sat in a Marion County Jail holding cell awaiting transport back to prison, he met Miguel Barragan-Lopez. The two cellmates struck up a conversation and Barragan-Lopez provided information that, if true, would exonerate Bedolla.

Barragan-Lopez told Bedolla that he knew Sarai Solano—the one witness that testified she saw Bedolla shoot Espinoza—and she told him that another man committed the murder. Specifically, Barragan-Lopez recounted he had a brief relationship with Solano and she confided to him that Jose Reyes (her old boyfriend) shot and killed Espinoza, not Bedolla.

Bedolla relayed this information to his post-conviction attorney ("Counsel") and asked her to investigate. Counsel talked with both Barragan-Lopez and his attorney. In April 2017, Counsel submitted a third amendment to Bedolla's PCR petition, alleging newly discovered evidence revealed a different killer and entitled him to a new trial. Counsel arranged to have Barragan-Lopez testify at an April 26, 2017 evidentiary hearing, but a week before the hearing United States Marshalls moved him from Indianapolis to Litchfield, Kentucky.

On July 19, 2017, Counsel attempted to take Barragan-Lopez's recorded statement, but he refused to go on the record without a court order. Counsel updated the post-conviction court about the prior unsuccessful attempts to have Barragan-Lopez testify. She moved for leave to depose Barragan-Lopez and attached the subpoena to the motion. Counsel acknowledged that since Barragan-Lopez was in Kentucky, she would need to utilize the Uniform Interstate Depositions and Discovery Act to serve the subpoena. The State did not respond to Counsel's motion and the court later granted it.

On September 13, 2017, Counsel travelled to Kentucky to depose Barragan-Lopez. The State participated via video conference. Shortly into the deposition, the State objected to Counsel's leading questions, calling them "totally inappropriate for a trial deposition." Appellant's App. Vol. III, p. 72, lines 17–18. Upon hearing the State's objections, Barragan-Lopez said: "If they're not appropriate, then I want to leave." *Id.* at 72, lines 21–22. Counsel tried to explain to Barragan-Lopez that the State was objecting only as to the questions' form and reminded him that he was under a subpoena. After listening to the back-and-forth between the attorneys, Barragan-Lopez said he could help Bedolla, but he did not want to get into trouble. As Counsel tried to continue the deposition, Barragan-Lopez repeatedly said he wanted his attorney present because he did not trust what either the State or Counsel was telling him. Barragan-Lopez affirmed he would eventually talk, but he wanted his attorney present. Before leaving the room, Barragan-Lopez told Counsel: "I know that you feel bad because I want to leave. But if you come back with my attorney, I will answer all of the questions you have." *Id.* at 82, lines 5–7. Counsel called Barragan-Lopez's attorney, but the latter could not participate in the deposition that day.

One week later, the parties appeared before the post-conviction court for a status hearing. At the beginning of the hearing the court said: "I think I had just set this for a hearing to make sure that I got my order out on that [deposition] motion. I meant to actually vacate this hearing." Tr. Vol. III, p. 35, lines 1–3. The court then cleared up a duplicate filing and asked, "So is there anything else?" *Id.* at 36, lines 15–16. At this Counsel updated the court:

> We're still working on getting [the deposition] completed, Your Honor. I'm in touch with the deponent's counsel. He's on vacation this week and we're scheduled to talk on Monday. So we'll coordinate a new time.

*Id.* at 36, lines 17–20. The court said, "okay . . . anything further State?" *Id.* at 36, lines 21–24. The State then objected to further depositions since Barragan-Lopez twice refused to talk. The post-conviction court admitted,

"I don't know any of this." *Id.* at 37, line 8. Counsel then explained her efforts and the subsequent roadblocks to her getting Barragan-Lopez's testimony before the court. Counsel confirmed she talked with Barragan-Lopez's attorney about the deposition, but she could not remember (due to her granddaughter's recent death) whether she notified the attorney of the deposition date. The State responded by questioning whether Barragan-Lopez currently had counsel. The State then went on to argue that another deposition would yield only inadmissible evidence since Barragan-Lopez's testimony would be merely impeaching and, thus, would not qualify as newly discovered evidence. After hearing argument from the State alone on the issue of whether Barragan-Lopez had counsel or would provide admissible evidence, the Court said:

> Okay. We're done. The Court is going to show evidence is closed on this. I've done everything the Court needs to do. This is—we've had, what, three hearing[s] with multiple witnesses already. The parties are going to submit their Proposed Findings of Fact and Conclusions of Law on or before November 8th. If you need more time, let me know that and I'll give you more time.

*Id.* at 42, lines 7–13. Counsel began to ask permission to briefly respond to the State's arguments, but the post-conviction court cut her off with a curt, "No." *Id.* at 42, line 16. Counsel then asked permission to make an offer of proof for what Barragan-Lopez would say when this exchange ensued:

| The Court: | No. This is not a criminal matter. This is quasi-civil. And you've had multiple opportunities to get the testimony of this witness. The evidence is closed in this matter. |
|---|---|
| | All right. Next case. |
| Counsel: | Your Honor, I do believe . . . |
| The Court: | Marcell Boutte. |

| Counsel: | . . . we have the right . . . |
|---|---|
| The Court: | Counsel, I have told you this is a quasi-civil matter. And if you want to appeal it, you may appeal it. But at this point I'm done hearing the argument on this witness. |
| | Marcell Boutte. |
| Counsel: | Your Honor? |
| The Court: | I've called the next case, counsel. |
| Counsel: | I apologize, Your Honor. I do need to make an offer to prove and I also think my client has the right to . . . |
| The Court: | Counsel, if you don't move away from the table right now, I'm going to ask the deputy to put you in the back. All right. I have told you three times your case is over. . . . If you have a difficulty with that, then you can always go to the higher court. |

*Id.* at 43–44. With that, the status hearing the post-conviction court intended to vacate ended.

Bedolla filed a motion to correct error, making two distinct arguments. First, Bedolla argued that the post-conviction court erred in denying Counsel the chance to make an offer of proof. Second, he argued the post-conviction court erred in refusing to hear Counsel's argument concerning Bedolla's right under the Trial Rules to request sanctions against Barragan-Lopez. The post-conviction court denied the motion. Bedolla next moved the post-conviction court to stay the proceedings and certify for interlocutory appeal its order denying his motion to correct error. The court granted that motion and the Court of Appeals accepted jurisdiction.

The Court of Appeals rephrased the parties' arguments into a single issue: "whether the post-conviction court abused its discretion when it did not sanction a federal prisoner who refused to answer questions during a deposition without an attorney present." *Bedolla v. State*, No. 49A02-1712-PC-3004, 2018 WL 4275360, at *1 (Ind. Ct. App. Aug. 31, 2018). The Court of Appeals concluded as a matter of law that since Barragan-Lopez's testimony would merely impeach Sarai Solano, it would not amount to newly discovered evidence entitling Bedolla to a new trial. *Id.* at *5. And so assuming without deciding that an Indiana court even could sanction an uncooperative witness following a deposition in Kentucky, the Court of Appeals held the post-conviction court did not abuse its discretion by not sanctioning Barragan-Lopez. *Id.* at *4–5. Bedolla now seeks transfer.

Although the parties' arguments present issues related to the Indiana Constitution's Open Courts clause, or the scope and application of the Indiana Trial Rules in post-conviction proceedings, or the Uniform Interstate Depositions and Discovery Act, or when newly discovered evidence is considered merely impeaching—we view these issues as premature considering the record before us. Rather, the dispositive issue here, in our view, is whether the post-conviction court abused its discretion in closing evidence without allowing Counsel to make an offer of proof and thus foreclosing enforcement of a valid subpoena to secure a deposition. It is to address this issue alone that we now grant transfer.

## Standard of Review

"Discretion is a privilege afforded a trial court to act in accord with what is fair and equitable in each case." *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind. 1993). A court's discretion—and obligation to act fairly—naturally extends to decisions made while overseeing the proceedings before it and regulating discovery. We, therefore, review a court's decision to deny an offer of proof, to close the evidence, and thereby foreclose discovery enforcement for an abuse of that discretion. *See Pierce v. State*, 29 N.E.3d 1258, 1264, 1267–68 (Ind. 2015). A court's decision in these matters "should be upset only when the court reached an erroneous conclusion and judgment, one clearly against the logic and

effect of the facts and circumstances before the court or the reasonable, probable and actual deductions to be drawn therefrom." *Tucker v. State*, 786 N.E.2d 710, 712 (Ind. 2003) (quoting *Tapia v. State*, 753 N.E.2d 581, 585 (Ind. 2001)). Under this deferential standard, "[w]e will second-guess the [lower] court only when it responds to that factual context in an unreasonable manner." *Tapia*, 753 N.E.2d at 585.

# Discussion and Decision

"[F]undamental fairness [is] essential to the very concept of justice." *Leach v. State*, 699 N.E.2d 641, 642 (Ind. 1998). Our justice system requires that litigants (be they civil or criminal) receive equal opportunity to present their case to an impartial factfinder. *See Prime Mortg. USA, Inc. v. Nichols*, 885 N.E.2d 628, 649 (Ind. Ct. App. 2008) (stating "the opportunity to be heard in court is a litigant's most precious right and should be sparingly denied"); *Everling v. State*, 929 N.E.2d 1281, 1287 (Ind. 2010) ("A trial before an impartial judge is an essential element of due process."). By making evidentiary decisions, controlling the proceedings, and maintaining courtroom discipline, Indiana's trial judges play the pivotal role in ensuring litigants receive fundamentally fair proceedings. *See generally Timberlake v. State*, 690 N.E.2d 243, 256 (Ind. 1997). Indeed, we've said our trial judges stand as "gatekeepers of justice." *Logan v. State*, 16 N.E.3d 953, 965 (Ind. 2014).

Trial courts undoubtedly shoulder a heavy burden in assuring justice is served speedily and efficiently while maintaining the parties' rights. But does a trial court abuse its discretion as gatekeeper by denying a party's legitimate offer of proof and thereby closing evidence and foreclosing discovery sanctions? Based on the specific facts before us, we answer yes.

# I. The post-conviction court abused its discretion by denying Counsel the opportunity to make an offer of proof.

"[F]undamental fairness dictates that any party shouldering the burden of coming forward with evidence . . . be given a relatively untrammeled opportunity to do so." *Hirsch*, 697 N.E.2d at 43. The evidentiary burden certainly includes making necessary offers of proof. Indeed, "offers of proof are important procedural tools." *Littler v. State*, 871 N.E.2d 276, 278 n.2 (Ind. 2007). They are most beneficial when the trial court must decide whether to exclude proffered testimony. A valid offer to prove must explain three points: (1) the testimony's substance; (2) the testimony's relevance; and (3) the grounds for admitting the testimony. *Roach v. State*, 695 N.E.2d 934, 939 (Ind. 1998); *Nelson v. State*, 792 N.E.2d 588, 594 (Ind. Ct. App. 2003).

Offers of proof "benefit[] not only the parties and the trial court," but they are invaluable to reviewing courts. *Littler*, 871 N.E.2d at 278 n.2. To be sure, appellate courts cannot duly review whether a lower court properly excluded evidence if the party below did not (or could not) make an offer of proof. *See Roach*, 695 N.E.2d at 939 (citing Ind. Evidence Rule 103(a)(2)).

Offers of proof, thus, help assure parties receive fundamental fairness at both the trial and appellate levels. *Pierce*, 29 N.E.3d at 1268. So when a party asks to make a legitimate offer of proof, the trial court should grant that request. *Littler*, 871 N.E.2d at 278 n.2 (cautioning that a trial court "should very rarely completely deny a party's request to make an offer of proof, and then only upon clear abuse by the requesting party"). *Cf. Nelson*, 792 N.E.2d at 595 ("We hold that a party has a right to make an offer of proof [and] . . . that it is reversible error for a trial court to deny . . . an offer of proof."). Of course, as part of its duty to impartially control a proceeding, the "court may exercise reasonable discretion in determining the timing and extent" of an offer of proof. *Pierce*, 29 N.E.3d at 1268 (quoting *Littler*, 871 N.E.2d at 278 n.2). But nevertheless, absent clear abuse by a party, offers of proof should be allowed.

Looking at this record, we see the post-conviction court abused its discretion in preventing Counsel from making an offer of proof concerning Barragan-Lopez's anticipated testimony. Bedolla believed Barragan-Lopez's testimony could prove his actual innocence and Counsel tried to secure the evidence through discovery. We note that until the status hearing, the State had not opposed the deposition. Likewise, the State made no argument that Counsel had been dilatory in getting Barragan-Lopez's deposition or that Counsel had abused the discovery process or that the State would be prejudiced in continuing the matter to allow for another deposition.[1] Tr. Vol. III, pp. 36–37, 40–42. Yet the post-conviction court, after hearing only the State's argument, refused to listen to Counsel's offer of proof and warned that a deputy would remove her if she did not yield her spot at counsel's table. *Id.* at 42–43. In our view, the post-conviction court "respond[ed] to [this] factual context in an unreasonable manner." *Tapia*, 753 N.E.2d at 585.

The post-conviction court "ha[d] the responsibility to direct the [proceedings] in a manner that facilitates the ascertainment of truth, ensures fairness, and obtains economy of time and effort commensurate with the rights of society and the [petitioner]." *Vanway v. State*, 541 N.E.2d 523, 526 (Ind. 1989). But a court cannot ensure fundamentally fair proceedings that "promote discovery of truth," *id.* at 527, without listening to arguments from both parties. Although "[w]e afford trial judges ample 'latitude'" in controlling the proceedings and "[w]e even tolerate a 'crusty' demeanor towards litigants so long as it is applied even-handedly," *In re J.K.*, 30 N.E.3d 695, 698–99 (Ind. 2015), we cannot affirm the court's decision here. The post-conviction court's refusal to hear further argument and its intemperate demeanor amount to an abuse of discretion—they even undermine the fundamental fairness the Indiana Constitution demands. *See Edwards v. State*, 902 N.E.2d 821, 828 (Ind. 2009) ("[W]e have found that the Indiana Constitution assumes and demands fundamental fairness in all judicial proceedings."). We, therefore, reverse

---

[1] We also note that at oral argument the State conceded there would be no harm in allowing the deposition now. Oral Argument at 18:24.

the post-conviction court's order denying Bedolla's motion to correct error.

We pause briefly to note Bedolla's motion to correct error and petition for interlocutory appeal also alleged the post-conviction court abused its discretion in refusing to hear Counsel's arguments about discovery sanctions. But we cannot address that argument because we see the post-conviction court's refusal to hear an offer of proof from Counsel and then intimidating her from speaking as the first domino falling, causing a chain reaction that makes appellate review of whether Counsel could move for sanctions, let alone enforce them via the UIDDA, premature. Without an offer of proof explaining the testimony's substance, relevance, and admissibility, a court cannot properly determine if discovery sanctions would be beneficial to ascertaining truth and securing the parties' rights. *See generally Wright v. Miller*, 989 N.E.2d 324, 327 (Ind. 2013). And without Barragan-Lopez's deposition—or even an offer of proof—no court can determine if that evidence would be newly discovered evidence entitling Bedolla to a new trial or whether it would be merely impeaching.

## II. Bedolla may proceed with the deposition.

But having found reversible error in refusing the offer to prove, we now must determine the necessary relief. Bedolla's transfer petition presented us with two options for relief: allow for discovery sanctions and allow more time for the deposition. Bedolla made similar requests at oral argument, but also asked this Court to remand with instructions to allow the offer to prove or allow the deposition. Oral Argument at 4:13, 7:15–8:01, 17:08, 38:45–40:14. Since the record before us contains the essential information for an offer to prove—the proposed testimony's substance, relevance, and potential admissibility—we consider that and conclude Bedolla should be permitted to proceed with the deposition.

When asked during oral argument what the offer to prove would have been, Bedolla directed us to the third amendment to his post-conviction relief petition. Based on conversations with Barragan-Lopez, Bedolla and his Counsel anticipate that Barragan-Lopez will testify that Solano recanted her testimony that Bedolla murdered Espinoza and she identified

Jose Reyes as the killer. *See* Oral Argument at 7:20–8:36; Appellant's App. Vol. II, pp. 141–44. Testimony that, if true, would exonerate one man and implicate another certainly meets the low bar for relevance under our evidentiary rules. Evid. R. 401. As for admissibility, Bedolla anticipated the testimony could be admissible as a Statement Against Interest under Rule 804(b)(3). Oral Argument at 9:15–9:33.[2] Based on this piecemeal offer to prove—coupled with the fact that both parties and the post-conviction court agreed to the deposition—we remand the matter with instructions to proceed with the deposition.

## Conclusion

For these reasons, we reverse the post-conviction court's order denying Bedolla's motion to correct error and we remand this matter for further proceedings consistent with this opinion.


Rush, C.J., and David, J., concur.
Massa, J., concurs in result.
Slaughter, J., concurs in part, dissents in part with separate opinion.

---

[2] We take as true Counsel's representations at oral argument that she has contacted counsel in North Carolina (Barragan-Lopez has since been moved from Kentucky to North Carolina) to help properly serve and enforce the subpoena. Oral Argument at 15:07, 17:31. Likewise, we trust that Counsel will coordinate with deponent's attorney or others to assure Barragan-Lopez has the benefit of counsel during the deposition.

ATTORNEY FOR APPELLANT
Cynthia M. Carter
Law Office of Cynthia M. Carter, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

**Slaughter, J., concurring in part, dissenting in part.**

I share the Court's concern that the trial court was heavy-handed in refusing to allow Bedolla's counsel the opportunity to make a modest offer of proof—going so far as to threaten the lawyer with contempt. I appreciate that busy trial judges with heavy dockets can grow frustrated with lawyers' wheel-spinning and reach a point that counsel must either "put up or shut up". There is no obvious point along the continuum in a given case when that time has arrived (or been exceeded), and that is why trial courts are entitled to considerable deference on review when they conclude "enough is enough". My initial vote in this case was to deny transfer because the court of appeals' unanimous opinion has no precedential value—and, on the merits, the opinion struck me as reflecting a reasonable level of deference to the trial court's exercise of discretion here. My colleagues, however, view this case differently and believe the trial court abused its discretion. That was not my original view. But I can live with that result in this case.

I write separately, however, because the relief awarded to Bedolla exceeds what follows from the wrong he sustained. Recall that our narrow holding here is that a post-conviction court abuses its discretion when it denies a party's legitimate request to make an offer of proof. The obvious remedy is to vacate the trial court's judgment and remand with instructions to allow Bedolla to do what the trial court refused—which is to make his offer of proof. That remedy would be proper and proportional to the wrong suffered. But the Court goes beyond that remedy and orders that Bedolla may proceed with his deposition of Barragan-Lopez. That remedy is unwarranted, in my view, for two reasons.

First, it affords Bedolla more relief than he sought. The relief sought was to enforce the deposition subpoena by ordering sanctions against Barragan-Lopez under Indiana Trial Rule 37. And on transfer, Bedolla doubled down on his request for sanctions by arguing "there is no specific case law regarding the use of Trial Rule 37 to enforce a subpoena for an out-of-state witness who has exculpatory evidence." Instead of addressing Bedolla's request for sanctions, the Court skips over that step and orders that he be permitted to depose Barragan-Lopez. The Court thus says, in

effect, it doesn't matter what the trial court might conclude on remand after hearing Bedolla's offer of proof. Bedolla gets to take the deposition no matter what. In that sense, the Court's holding today is broader than it lets on.

Second, the Court's remedy ignores the more fundamental problem that Bedolla sought relief from the wrong court. Not only does Rule 37 not entitle Bedolla to a sanctions award against the deponent, but the deponent is outside the jurisdiction of the Marion Superior Court. By its terms, Trial Rule 37 does not afford relief here. Rule 37(B)(1) contemplates sanctions by a court where the deposition is taken. And Rule 37(B)(2) permits an Indiana court to award sanctions against a party or a party's representative. But the initial deposition was in Kentucky not Indiana, and the deponent is not a party to Bedolla's post-conviction proceeding but a non-party witness. So nothing in Rule 37 entitles Bedolla to an award of sanctions from the Marion Superior Court. And, more fundamentally, Barragan-Lopez is not subject to the jurisdiction of that court. He is not a party to a pending suit in Marion County, and he is physically located in another state. What Bedolla should have done is sought sanctions in the court where Barragan-Lopez is in custody. That court—not the Marion Superior Court—has jurisdiction over him and can award whatever sanctions against him may be warranted for his failure to comply with the subpoena.

Although I am sympathetic to the Court's impulse to do justice in this case, I respectfully dissent from its conclusion that we should excuse Bedolla's procedural errors and award him more relief than he sought or than the trial court's violation warrants.