# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 02 2020, 9:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan J. Schueler
Bloomington, Indiana

I N  T H E

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Catherine R. Fleetwood, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Timothy D. Haney, <br> *Appellee-Respondent*. | March 2, 2020 <br><br> Court of Appeals Case No. <br> 19A-DR-1898 <br><br> Appeal from the Monroe Circuit Court <br><br> The Honorable Elizabeth A. Cure, Judge <br><br> Trial Court Cause No. <br> 53C04-0904-DR-263 |

**Mathias, Judge.**

[1] The Monroe Circuit Court suspended Catherine Fleetwood's ("Mother") supervised parenting time. Mother appeals and raises the following dispositive issue: whether the trial court abused its discretion when it suspended Mother's parenting time with her minor child.

We reverse and remand for proceedings consistent with this opinion.

## Facts and Procedural History

The parties' marriage was dissolved on some unknown date prior to the events that are described herein. Timothy Haney ("Father") has primary custody of P.H., Father's and Mother's eleven-year-old child. Prior to December 2017, Mother had unsupervised parenting time with P.H. every other weekend. Appellant's App. p. 60.

Mother has a history of substance abuse. In December 2017, Mother was arrested and charged with battering her fifteen-year-old son who was trying to prevent Mother from driving while intoxicated.[1] Mother's infant child, N.F., was in the vehicle, and the baby was not wearing a diaper or appropriately dressed for the weather. P.H. was not present when Mother hit her oldest child. As a result of this incident, the Department of Child Services ("DCS") filed petitions alleging that Mother's three children were children in need of services ("CHINS").

On December 12, 2017, Father filed an emergency petition to modify Mother's parenting time with P.H. from unsupervised to supervised. At a hearing held on the petition, Mother admitted abusing alcohol after graduating from the Drug Court program on November 1, 2017. The trial court issued an order allowing

---

[1] The State later amended the charging information, and Mother pleaded guilty to misdemeanor disorderly conduct.

Mother supervised parenting time with P.H. to be arranged through her DCS caseworker. The court ordered that "[w]hen DCS is ready to close the [CHINS] case, this Court will schedule a hearing to determine what course of action to follow so that [P.H.] remains safe." Appellant's App. p. 69.

On January 10, 2018, on DCS's motion, the trial court dismissed the CHINS proceedings as to P.H.[2] In May 2018, Mother notified the court that she had not been able to participate in parenting time with P.H. since March 2018, and she requested a hearing to address the issue. The trial court issued an order allowing Mother to exercise supervised parenting time with P.H. through Family Solutions. Mother was ordered to bear financial responsibility for the visits. The trial court also set a parenting time review hearing for August 31, 2018. In response to the court's order, Mother requested an earlier hearing date and claimed that she was not able to pay $65 per hour to exercise supervised parenting time with P.H. The court declined to reset the previously scheduled August 31, 2018 hearing.

The parties appeared at the August 31 hearing pro se. On September 10, 2018, the trial court ordered that "[v]isitation shall remain as previously ordered on May 24, 2018." Appellant's App. p. 79. The court also ordered Mother and P.H. to have telephonic communication daily at 8:00 p.m. Father was ordered to initiate the phone call. On September 18, 2018, Mother contacted Family

---

[2] The CHINS petitions filed with regard to Mother's other children were dismissed without prejudice on March 19, 2018.

Solutions to schedule supervised parenting time with P.H. Family Solutions could not schedule the requested parenting time because Father had not contacted the agency.

[8] On January 28, 2019, Mother filed a petition for contempt and modification of parenting time. Mother alleged that her circumstances had changed because she was sober and attending parenting courses and therapy. Mother stated she could not afford the fee for supervised parenting time. Mother also claimed that Father had not initiated phone calls every night as required by the court's September 10, 2018 order, and he should be held in contempt.

[9] The guardian ad litem ("the GAL"), Terri Francis, filed her report on February 28, 2019. P.H. told the GAL that he wanted to spend time with Mother. P.H. and Mother speak daily on the telephone. Father admitted that he failed to initiate the court-ordered phone calls with Mother on five occasions. Appellant's App. p. 84. Father believed that Mother engaged in inappropriate conversations with P.H. during their nightly phone calls. P.H. participates in therapy, and his therapist agrees that parenting time between P.H. and Mother should continue to be supervised.

[10] When the GAL visited Mother's home, she observed that it was clean and appropriate for children. Mother shares custody of eighteen-month-old N.F. and has unsupervised parenting time with her sixteen-year-old child. The GAL observed that Mother "interacted well with" her toddler. *Id*. at 86. Mother informed the GAL that she has an AA sponsor who lives in Arizona. She

communicates with her sponsor daily but does not attend meetings. The GAL was concerned about Mother's ability to stay sober because she is not in therapy and does not attend AA or NA meetings. Therefore, she recommended that Mother have supervised parenting time with P.H. and unsupervised phone calls each evening.

[11] A hearing was held on March 11, 2019, at which Mother appeared in person and by counsel. Father appeared pro se. Mother requested a continuance because of issues raised in the GAL's report. The trial court granted the motion to continue to May 29, 2019. Father did not contact Family Solutions to assist Mother in establishing her supervised parenting time until after the March 11, 2019 hearing. Tr. p. 41.

[12] At the hearing held on May 29, 2019, Mother presented evidence that visitation between Mother and P.H. was appropriate and the visit supervisor did not have any concerns about Mother's behavior or interaction with P.H. Tr. p. 50. Licensed Clinical Social Worker Nathan Floyd believed that Mother was capable of having unsupervised parenting time if she could work with Father. Tr. pp. 58–59. Like the GAL, Father expressed concern about Mother's continued sobriety. Father does not want Mother to have unsupervised visitation with P.H. until Mother could provide a clean drug screen.

[13] Also, during the hearing, as Mother began to examine the GAL about her findings, the trial court commented,

Ms. Francis has provided invaluable service to this Court. I've seen GAL Reports all the time. Her reports are thorough and as comprehensive a report as I get. And she provides an invaluable service to this Court so if you are going to attempt to impugn her work, stop now. Okay? I absolutely am not going to allow you to sit here and impugn her work. It's not happening. Okay?

Tr. pp. 70–71.

[14] At the conclusion of the hearing, the court again remarked, "I don't know why you are trying to attack a GAL who has proven herself over and over and over again in my court and in other courts[.]" Tr. p. 109. Then the following exchange occurred between Mother's counsel and the court:

COUNSEL: And I apologize if the Court takes offense to that or if Ms. Francis does, I feel like it is also my duty to point out that in this particular case I am not sure, it seems to me that that is a conflict and I feel like I should point that out[.]

COURT: What conflict?

COUNSEL: She, well earlier her husband and his partner were [Father's] attorneys[.]

COURT: And if she was aware of that, that could be a problem, and then what you do is you bring it up, but she wasn't aware of it number one and number two, you know what, I can't imagine that Ms. Francis would discuss with Mr. Francis anything about this case . . . . Okay? And you're sitting there rolling your eyes and you're sitting there with your face going, well, and that is not acceptable. Okay? It's just not, get the consternation off your face.

Tr. p. 110. Counsel also noted that the GAL, Terri Francis, testified against Mother in a custody proceeding involving one of Mother's other children, and Francis was not the appointed GAL in that case.

[15] Mother testified that she was following the relapse prevention plan that was put in place during the CHINS proceedings. Tr. p. 88. And Mother participated in online AA meetings. Mother admitted that she is an alcoholic. Tr. p. 100. The trial court ordered Mother to take a hair follicle drug screen test. The court informed Mother that if the test was "clean" she would not have to do additional drug testing. Tr. p. 104. The court took the matter of parenting time under advisement.

[16] On June 3, 2019, Father filed a motion for contempt and alleged that Mother had not taken the hair follicle test as ordered. A hearing was held on the motion on June 13, 2019. Mother informed the court that she took the test on June 7, 2019. Tr. p. 114. Mother also admitted that she was arrested for driving under the influence on June 4, 2019. Tr. p. 115; *see also* Appellant's App. pp. 104–05. Counsel advised Mother not to testify to any details of the ongoing criminal investigation. The trial court agreed that Mother had properly invoked her Fifth Amendment right against self-incrimination, but also suspended her parenting time "until such time as she can testify[.]" Tr. p. 115.

[17] Counsel asked the court to admit evidence of a urine test that Mother took on June 6, 2019, "a couple days after the alleged OWI." *Id*. The trial court refused to admit the evidence stating "if you want her not to testify about the OWI, I understand. But you are not going to have her testify to part of it without opening the door to all of it." Tr. p. 116. Counsel asked to make an offer of proof, and the trial court refused the request.

[18] The trial court then told Mother that her parenting time with P.H. was suspended "until such time as you can testify and talk to me about the surrounding circumstances [of the arrest] without feeling that the [F]ifth [A]mendment is at stake." Tr. p. 118. The court instructed Mother to request a hearing when she was "ready to talk about what's happened and be open to questions[.]" Tr. p. 119. The trial court's accompanying written order provides:

> The court has been concerned about releasing the Mother from supervision because Mother has been reluctant to have drug screens done when ordered and has been reluctant to do much of anything to show her seriousness about staying sober. . . . After a hearing on Mother's Petition for Modification and before the Court could rule on the evidence, Mother was arrested for Operating a Vehicle While Intoxicated Endangering a Person on June 4, 2019. At a hearing on June 13, 2019, the Court suspended parenting time until Petitioner's Counsel files a Motion for Hearing.

Appealed Order p. 1.[3] Mother now appeals.

## Standard of Review

[19] Father has not filed an appellee's brief in this appeal. "[W]e do not undertake the burden of developing appellee's arguments, and we apply a less stringent standard of review, that is, we may reverse if the appellant establishes prima facie error." *Meisberger v. Bishop*, 15 N.E.3d 653, 656 (Ind. Ct. App. 2014).

---

[3] The appealed order was not included in the Appellant's Appendix.

Prima facie error means error "at first sight, on first appearance, or on the face of it." *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006).

## Discussion and Decision

[20] Mother argues that the trial court abused its discretion when it suspended her parenting time with P.H. because the evidence is not sufficient to support the conclusion that parenting time would endanger P.H.'s health or emotional development. Decisions about parenting time require courts to give foremost consideration to the best interests of the child. *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013). We review parenting time decisions for an abuse of discretion. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the court misinterpreted the law. *Hatmaker v. Hatmaker*, 998 N.E.2d 758, 761 (Ind. Ct. App. 2013).

[21] "'Indiana has long recognized that the right of parents to visit their children is a precious privilege that should be enjoyed by noncustodial parents,' and thus a noncustodial parent is 'generally entitled to reasonable visitation rights.'" *Perkinson*, 989 N.E.2d at 762 (quoting *Duncan v. Duncan*, 843 N.E.2d 966, 969 (Ind. Ct. App. 2006), *trans. denied* (citation omitted)).

> The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

Ind. Code § 31-17-4-2.

[22] **"Extraordinary circumstances must exist to deny parenting time to a parent, which necessarily denies the same to the child."[4]** *Perkinson*, 989 N.E.2d at 765. (Emphasis added). **"If the trial court finds such extraordinary circumstances do exist, then the trial court shall make specific findings regarding its conclusion that parenting time would endanger the child's physical health or significantly impair the child's emotional development."** *Id.* (Emphasis added); *see also Rickman v. Rickman*, 993 N.E.2d 1166, 1169 (Ind. Ct. App. 2013) (explaining that the trial court's written explanation must include both "a factual basis and a finding as to potential endangerment").

[23] The trial court suspended Mother's parenting time without making the requisite specific findings that parenting time between Mother and P.H. would endanger P.H.'s physical or emotional health.[5] But Mother does not argue that the lack of specific findings alone is sufficient to reverse the trial court's order suspending her parenting time.

---

[4] The Indiana Parenting Time Guidelines also stress that the child has the right to parenting time. Ind. Parenting Guideline 1(E)(5). Thus, our analysis must take into account the rights of both Mother and Child to a mutual relationship. *See Perkinson*, 989 N.E.2d at 764 ("Not only does a noncustodial parent have a presumed right of parenting time, but the child has the correlative right to receive parenting time from the noncustodial parent because it is presumed to be in the child's best interest.")

[5] We also observe that the trial court's previous orders restricting Mother to supervised parenting time with P.H. do not include the requisite specific findings to support the restriction.

[24] Rather, the focus of her argument is that the evidence is insufficient to support the trial court's decision to suspend her parenting time. Mother acknowledges that there is ample evidence in the record to establish that Mother struggles to maintain her sobriety. And Mother admitted that she is an alcoholic. In addition, prior to December 2017, while Mother had unsupervised parenting time with nine-year-old P.H., he provided care for N.F., Mother's infant child, which was not appropriate for his age.[6]

[25] While the evidence in this case supports the trial court's decision to order Mother's parenting time to be supervised, there is no evidence in the record to support complete suspension of her parenting time. The GAL recommended that Mother should have supervised parenting time with P.H., and P.H. wants to spend time with his Mother. And the concerns about Mother's sobriety are minimized when parenting time is supervised because Mother drives herself and not P.H. to the location where her parenting is supervised

[26] The visit supervisor testified that Mother's 2019 visits with P.H. were appropriate and he had no concerns about Mother's parenting during the visits. Tr. pp. 49–50. There is no evidence that would support the conclusion that allowing Mother to have supervised parenting time with P.H. might endanger his physical health or impair his emotional development. *See e.g. Hatmaker*, 998

---

[6] We also observe that prior to the May 2019 hearing in this case, P.H. began to act out sexually. The GAL expressed concern that P.H. "could potentially be a threat to [N.F.'s] safety if [Mother] fails to properly supervise him." Appellant's App. p. 90. P.H. is in therapy to address his sexually maladaptive behaviors, and his therapist stated that P.H. actively participates in therapy and is doing well.

N.E.2d at 761–62 (reversing the denial of Father's motion for unsupervised parenting time with child because the trial court made no finding of endangerment); *In re Paternity of W.C.*, 952 N.E.2d 810 (Ind. Ct. App. 2011) (reversing the trial court's order suspending Mother's parenting time with her special needs child despite need for Mother to improve her parenting skills because the evidence did not establish circumstances egregious enough to support a finding that parenting time should be terminated); *D.B. v. M.B.V.*, 913 N.E.2d 1271 (Ind. Ct. App. 2009) (reversing an order terminating Father's parenting time even though the GAL recommended eliminating parenting time because the children feared Father and did not want to participate in parenting time with him). This case does not present circumstances egregious enough to support the trial court's decision to suspend Mother's parenting time.

[27] Mother also raises the issue of the trial court's demeanor and impartiality. *See* Ind. Code of Judicial Conduct 2.2 and 2.3. In particular, Mother directs our attention to the trial court's statements during her examination of the GAL and the court's refusal to allow Mother to make an offer of proof with regard to her June 6, 2019 "ETG" test. Appellant's Br. at 20. Because we conclude that the trial court abused its discretion when it suspended Mother's parenting time, we do not separately address this issue.[7]

---

[7] Moreover, the trial court withdrew Francis as the GAL and appointed a new GAL in this case. Appellant's App. p. 46. And on August 12, 2019, two days before the notice of appeal was filed, the proceedings were transferred to a special judge. And because we are remanding with instructions to the trial court to reinstate Mother's supervised parenting time, we also decline to separately address Mother's claims concerning the

# Conclusion

The trial court abused its discretion when it suspended Mother's parenting time with P.H. We therefore remand this case to the trial court with instructions to issue an order reinstating Mother to supervised parenting time with P.H.

Reversed and remanded for proceedings consistent with this opinion.

Kirsch, J., and Bailey, J., concur.

---

admission of the June 6, 2019 test and her offer of proof. But we remind the trial court that "absent clear abuse by a party, offers of proof should be allowed." *See Bedolla v. State*, 123 N.E.3d 661, 667 (Ind. 2019).