


FILED

Jan 09 2026, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Yonatan J. Felipe Velasquez,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

January 9, 2026

Court of Appeals Case No.
24A-CR-2904

Appeal from the Tippecanoe Superior Court

The Honorable Steven P. Meyer, Judge

Trial Court Cause No.
79D02-2311-F3-000028

---

**Opinion by Judge Felix**
Judges Brown and Scheele concur.

**Felix, Judge.**

## Statement of the Case

Yonatan Felipe Velasquez was convicted of molesting J.J.-T., a child he had met online. During Velasquez's jury trial, he was prohibited from questioning a witness about alleged sexual contact J.J.-T. had with another person after Velasquez molested her, and his admissions to law enforcement were admitted over his objection. The trial court sentenced Velasquez to 12 years—10 years of incarceration and 2 years suspended to probation. Velasquez now appeals and raises three issues for our review, which we revise and restate as the following two issues:

1. Whether the trial court abused its discretion regarding certain evidence at trial; and
2. Whether the trial court abused its discretion in imposing Velasquez's sentence.

We affirm.

## Facts and Procedural History

In late spring and early summer 2023, Velasquez was 19 years old, and J.J.-T. was 11 years old. Sometime in March 2023, Velasquez "friended" J.J.-T. on Instagram, Tr. Vol. II at 141, and they began messaging one another through Instagram and Facebook Messenger. In messaging Velasquez, J.J.-T. told him she was 11 years old; Velasquez never disclosed his age to J.J.-T.

[4] In June 2023, J.J.-T. was staying with family in Lafayette, Indiana. In early June, J.J.-T. and her 14-year-old cousin A.M. snuck out of the house at night to meet Velasquez and another man. The two men drove J.J.-T. and A.M. to a gas station, gave them each a stuffed animal, and then drove them home.

[5] Two weeks later, J.J.-T. and A.M. again snuck out of the house at night to meet Velasquez and the other man. The group ended up at Murdock Park. While there, Velasquez "was getting touchy and stuff" with J.J.-T., Tr. Vol. II at 148, before he took her by the wrist to some nearby bushes. Once at the bushes, Velasquez held J.J.-T. down by her wrists and lifted up her dress. J.J.-T. "tr[ied] to get up because [she] didn't want to do it but [she] couldn't because [Velasquez was] stronger." *Id.* at 150. J.J.-T. told Velasquez to "stop, but he wasn't listening." *Id.* Velasquez then removed J.J.-T.'s underwear and inserted his penis into her vagina. This was "painful" for J.J.-T. "because that was the first time [she had] done it." *Id.* at 151. J.J.-T. continued trying to get away from Velasquez, and she tried to scream but couldn't "because he was covering [her] mouth," *id.* at 167. When Velasquez finally let J.J.-T. up, J.J.-T. redressed herself and "tried to run" to A.M., but Velasquez caught her by the wrist and "told [her] not to tell no one, not even [her] parents, not even [her] cousin." *Id.* at 152. Velasquez also warned J.J.-T. that if she told anyone, "[i]t was gonna go worse." *Id.* at 168. Velasquez and the other man then dropped J.J.-T. and A.M. off at the family residence.

[6] J.J.-T. returned to her mother's home in Illinois shortly thereafter. On June 23, J.J.-T. disclosed the abuse to her mother, who had "noticed that [J.J.-T.] was

walking awkwardly and that she was bleeding from her" vagina, Tr. Vol. II at 188.  J.J.-T.'s mother took her to the hospital because J.J.-T. "was bleeding a lot," Tr. Vol. II at 156, which had started immediately after Velasquez molested her.  Alysia Owens, a sexual assault nurse examiner, performed a pediatric sexual assault examination of J.J.-T.

[7]  On July 20, Lafayette Police Department ("LPD") Detective Kent Hesher interviewed Velasquez at the Indianapolis Metropolitan Police Department's detective offices in Indianapolis.  LPD Officer Isidro Medrano, whose "first language" is Spanish, Tr. Vol. II at 220, helped interpret and translate during the interview because Velasquez's primary language is Spanish.  Velasquez agreed to speak with Detective Hesher, and he admitted to having sexual intercourse with J.J.-T.  Velasquez "stated that [J.J.-T.] was acting weird or odd and she just kept staring at him.  So, they stopped."  Tr. Vol. III at 50.  Velasquez also told Detective Hesher that he had used a condom, which "fell off," and when "he tried to reinsert his penis into [J.J.-T.'s] vagina without the condom . . . it hurt and then that's when J.[J.-T.] told him to just stop."  *Id.*

[8]  The State charged Velasquez with child molesting as a Level 3 felony.[1]  At trial, J.J.-T. testified to the molestation as described above, Owens testified about her examination of J.J.-T., and portions of Velasquez's interview with law enforcement were admitted and published.  The jury found Velasquez guilty as

---

[1] Ind. Code § 35-42-4-3(a).

charged. The trial court sentenced Velasquez to 12 years, with 10 years of incarceration and the remaining 2 years suspended to probation. This appeal ensued.[2]

## Discussion and Decision

### 1. The Trial Court Did Not Err by Excluding and Admitting Certain Evidence at Trial

[9] Velasquez contends the trial court erred by excluding and admitting certain evidence at trial. We generally review evidentiary rulings for an abuse of discretion. *Russell v. State*, 234 N.E.3d 829, 858 (Ind. 2024) (quoting *Conley v. State*, 972 N.E.2d 864 (Ind. 2012)), *cert. denied*, 145 S.Ct. 424 (2024). "[W]e may affirm the trial court's decision on any basis supported by the record," *Means v. State*, 201 N.E.3d 1158, 1163 (Ind. 2023) (citing *Ramirez v. State*, 174 N.E.3d 181, 190 n.2 (Ind. 2021)), and we will reverse "only where the decision

---

[2] We remind Velasquez's counsel that pursuant to Indiana Appellate Rule 50(B)(1)(a), the appellant's Appendix in a criminal case must include the entire Clerk's Record, not just a selection of materials therefrom. *See* Ind. Appellate Rule 2(E) ("The Clerk's Record is the Record maintained by the clerk of the trial court . . . and *shall consist of* the Chronological Case Summary (CCS) and *all papers, pleadings, documents, orders, judgments, and other materials filed in the trial court . . .* or listed in the CCS." (Emphases added)). To the extent necessary and pursuant to Appellate Rule 27 and Indiana Evidence Rule 201, we have taken judicial notice of the Clerk's Record in this case. *See Horton v. State*, 51 N.E.3d 1154, 1156 (Ind. 2016) (taking judicial notice under Evidence Rule 201 of documents that were part of the Record on Appeal as defined in Appellate Rule 27).

We also note that a confidential version of the transcript was not filed with this court despite portions thereof being deemed not for public access pursuant to Indiana Access to Court Records Rule 5(C). *See* App. R. 23(F)(3)(b), 28(F)(2). The resulting omissions complicated but did not substantially impede our review of this appeal.

is clearly against the logic and effect of the facts and circumstances," *Russell*, 234 N.E.3d at 858 (quoting *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001)).

[10] Velasquez specifically challenges two evidentiary rulings: (a) the trial court's decision to prevent Velasquez questioning Owens about certain statements J.J.-T. made to her during the sexual assault examination, and (b) the trial court's decision to admit videos of Velasquez's interview with law enforcement. We address each challenge in turn.

### a. *Owens's Testimony*

[11] When cross-examining Owens about the contents of her examination report for J.J.-T., Velasquez asked her, "Your report also indicates that there was oral sexual contact with someone else other than the alleged-[.]" Tr. Vol. III at 31. The State objected to this question as violative of Indiana Evidence Rule 412.[3] The trial court sustained the State's objection, determining that Velasquez's question "falls within the overall realm of [Evidence Rule] 412." *Id.* at 34. Velasquez challenges the trial court's exclusion of testimony regarding J.J.-T.'s alleged "oral sexual contact" with another person, Tr. Vol. III at 31.

[12] Because Velasquez is challenging the exclusion of evidence, he must show that (1) the exclusion "affects a substantial right of the party" and (2) he informed

---

[3] Subject to limited exceptions, Evidence Rule 412 prohibits the admission into evidence in a civil or criminal proceeding involving alleged sexual misconduct the following types of evidence: (1) "evidence offered to prove that a victim . . . engaged in other sexual behavior," or (2) "evidence offered to prove a victim's . . . sexual predisposition."

the trial court of the substance of the excluded evidence "by an offer of proof, unless the substance was apparent from the context." Ind. Evidence Rule 103(a)(2). "An offer of proof allows the trial and appellate courts to determine the admissibility of the testimony, as well as the potential for prejudice if it is excluded." *Heckard v. State*, 118 N.E.3d 823, 828 (Ind. Ct. App. 2019) (citing *Dylak v. State*, 850 N.E.2d 401, 408 (Ind. Ct. App. 2006), *trans. denied*), *trans. denied*. "A valid offer to prove must explain three points: (1) the testimony's substance; (2) the testimony's relevance; and (3) the grounds for admitting the testimony." *Bedolla v. State*, 123 N.E.3d 661, 666–67 (Ind. 2019) (citing *Roach v. State*, 695 N.E.2d 934, 939 (Ind. 1998); *Nelson v. State*, 792 N.E.2d 588, 594 (Ind. Ct. App. 2003)).

[13]     Velasquez did not explain the substance of the testimony he wanted to elicit from Owens, the examination report was never admitted, and it is not apparent from the record what that substance would have been. Velasquez only explained why he wanted to question Owens about the oral contact J.J.-T. reported:

> To show that she was not, the State is painting the picture that [J.J.-T.] was totally taken advantage of and totally caught off guard by his advances and totally scarred by his advances. And I think we'll see with things like this and other pieces of the puzzle that she was acting like, as the witness again said, a normal eleven-year-old, you know, preteen. And the fact that she kissed another boy a couple of days later. If she was scarred by this incident the way that the State is saying she was, she wouldn't have been kissing another boy. Not saying, you know, it's, it

doesn't even necessarily matter the truthfulness, the fact that it appears on the report.

Tr. Vol. III at 33.

[14] Without any indication about the substance of Owen's testimony concerning the reported oral contact, Velasquez's explanation does not amount to a valid offer to prove, so he failed to preserve for our review any alleged error in the trial court's exclusion from evidence of the oral contact testimony. *See* Evid. R. 103(a)(2); *Fowler v. State*, 929 N.E.2d 875, 881 (Ind. Ct. App. 2010), *trans. denied*. Any alleged error in the exclusion of Owen's testimony is therefore waived. *See Bedolla*, 123 N.E.3d at 667 (citing *Roach*, 695 N.E.2d at 939) ("[A]ppellate courts cannot duly review whether a lower court properly excluded evidence if the party below did not . . . make an offer of proof."). So, we cannot say the trial court abused its discretion by excluding that testimony.

### b. *Velasquez's Interview*

[15] Velasquez challenges the trial court's admission of the videos of his interview with Detective Hesher, claiming his waiver of rights was not intelligently made and therefore not valid. At the beginning of that interview, Velasquez indicated "he knew English . . . a little bit," Tr. Vol. II at 234, and that he knew how to read Spanish. Detective Hesher gave Velasquez an advice of rights form written in Spanish:

CONSEJO DE DERECHOS

LUGAR 4134 Keystone Ave
FECHA 07/28/2023
HORA 10:09 am

Antes de que preguntamos unas preguntas, usted tiene que entender sus derechos:

Tienes el derecho de mantenerse callado.

Qualquier cosa que usted dice, y hace, puede ser usado encontra suyo en la corte.

Tienes el derecho de hablar con un abogado para consejo antes de que preguntamos unas preguntas, y tenerlo presente con usted durante interregatorio si tu deseas.

Si no puedes el gasto de un abogado, uno puede ser asignado a representar a usted antes de interrogatorio, si tu deseas uno.

Si tu decides contestar preguntas ahora sin un abogado presente, usted todavia tienes el derecho de cesar de contestar preguntas a cualquier tiempo. Usted tambien tienes el derecho de cesar contestando preguntas a cualquier tiempo hasta que hablas con un abogado.

RENUNCIO DE DERECHOS

Entiendes cada uno de estos derechos que te he explicado?

Teniendo estos derechos en su mente, usted quiere hablar con nosotros ahora?

He leedo esta declaracion de mis derechos e entiendo cuales son mis derechos.

_____
Firma

Quiero hacer una declaracion y contestar preguntas. Yo no quiero un abogado a este tiempo. Yo entiendo y se lo que estoy haciendo. No promesas o amenazos han sido hechos a mi, y no presion o coaccion de cualquier tipo ha sido usado en contra mio.

_____
Testigo

_____
Firma

_____
Testigo

Tr. Vol. IV at 18.  Officer Medrano testified that the content of this form was as follows:

> The first line states before we ask you any questions you have to understand your rights.  The second line states you have the right to remain silent.  Anything you say can and will be used against you in a court of law.  You have the right to speak to an attorney before we ask you any questions and have them present with you during any interrogation.  If you can't afford one, one can be

appointed to you before the interrogation if you desire one. And then the next line is if you decide to answer any questions without a[n] attorney present you still have the right to stop answering any questions at any time and you have the right to stop answering questions until you speak to an attorney. And then the next line would be do you un-Do you understand all these rights.

\* \* \*

The heading says I waive my rights. Then right under that it states do you understand the rights that were explained to you. Having these rights in your mind, do you wish to speak to us. And it says I've read my rights and I understand my rights. And then, then it has his signature. Underneath that is his signature.

\* \* \*

[After the first signature, i]t states that he wants to make a statement and answer questions and that I do not want an attorney at this time. It says I understand and I know what I'm doing. No promises or threats have been made against me. And it, I mean it just goes on stating no promises have been made with me. And then it's got his signature and then it's got Hesher's, Detective Hesher's signature as the witness.

Tr. Vol. II at 232–33.

[16]     Officer Medrano testified that when Detective Hesher handed the advice of rights form to Velasquez, Detective Hesher stated, "[I]t's just like the movies." Tr. Vol. II at 231, 234. Officer Medrano "actually didn't interpret that" statement to Velasquez because "[i]t was irrelevant." *Id.* at 234.

Office Medrano advised Velasquez "that he needed to understand his rights before [they] started talking to him," *id.* at 236, and to not "sign it" unless he understood his rights, *id.* at 229. Officer Medrano "then . . . briefly summarized what the form said." *Id.* at 236. Officer Medrano did not read the form to Velasquez because it was in Spanish—Velasquez's "native language"—and the form was "not common Spanish," which makes it "sometimes easier to read it than somebody reading it to you." *Id.* at 237. In describing the form as "not common Spanish," Officer Medrano meant that it was a direct translation of the English language form, so it was "more based on proper English" and was "not something that is commonly spoken and translated into Spanish," *id.* at 238.

While reviewing the form, Velasquez asked Officer Medrano, "[D]o I need an attorney." Tr. Vol. II at 234. Officer Medrano informed Velasquez that he "didn't need an attorney but this was how [they were] going to be able to talk with him," *id.*, and "it was up to him" if he wanted an attorney, *id.* at 229. According to Officer Medrano, Velasquez appeared to understand his rights. Velasquez signed the form and made a statement.

At trial and now on appeal, Velasquez challenges the validity of his waiver. Pursuant to the United States Supreme Court's decision in *Miranda v. Arizona*, a person who is subjected to custodial interrogation must first be warned that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any

questioning" should he so desire. 384 U.S. 436, 479 (1966). A person's statements to law enforcement while under custodial interrogation are inadmissible at trial unless the State proves beyond a reasonable doubt that (1) the person was *Mirandized* and (2) the person knowingly and voluntarily waived his rights. *Id.*; *see also Ringo v. State*, 736 N.E.2d 1209 (Ind. 2000) (citing *Schmitt v. State*, 730 N.E.2d 147, 148 (Ind. 2000)).

[20] When determining whether law enforcement adequately conveyed the *Miranda* warnings, reviewing courts "are not required to examine the words employed as if construing a will or defining the terms of an easement." *State v. Banks*, 2 N.E.3d 71, 78 (Ind. Ct. App. 2014) (citing *Florida v. Powell*, 559 U.S. 50, 60 (2010)). Instead, "the inquiry is simply whether the warnings reasonably convey to a suspect his rights as required by *Miranda*." *Id.* (citing *Powell*, 559 U.S. at 60). "There is no formal requirement for how the State must meet its burden of advising an individual consistent with *Miranda*, so this court examines the issue in light of the totality of the circumstances." *Id.* (quoting *State v. Keller*, 845 N.E.2d 154, 161 (Ind. Ct. App. 2006)). In examining "the totality of the circumstances as presented by the record," reviewing courts "are guided by several factors including police coercion; the length, location, and continuity of the interrogation; and the defendant's maturity, education, physical condition, and mental health." *Bond v. State*, 9 N.E.3d 134, 137 (Ind. 2014) (citing *Miller v. State*, 770 N.E.2d 763, 767–68 (Ind. 2002)). "The critical inquiry is whether the defendant's statements were induced by violence, threats,

promises or other improper influence." *Id.* (quoting *Ringo*, 736 N.E.2d at 1212–13).

[21] Velasquez specifically argues that his waiver of rights was not valid because the advice of rights form was difficult to understand and because Officer Medrano's and Detective Hesher's statements to Velasquez about the form and his rights amounted to trickery and cajoling.[4] The evidence before the trial court was that Velasquez, who speaks and reads Spanish, was given a Spanish advice of rights form; Officer Medrano summarized the form for Velasquez; Velasquez had the opportunity to and did ask questions about the form; and Velasquez signed the form. Based on the evidence the State presented, it proved beyond a reasonable doubt that Velasquez knowingly and voluntarily waived his rights.

[22] At the hearing on the validity of Velasquez's waiver, he did not present any evidence, let alone evidence that would contradict the State's case of a valid waiver. Yet on appeal, Velasquez contends that "the uncommon language contained in the form would make it difficult for a lay person to understand the importance and gravity of the waiver they are signing." Appellant's Br. at 18. However, there is no evidence in the hearing record tending to show that

---

[4] For the first time on appeal, the State contends that Velasquez was not under custodial interrogation during the interview. At trial, neither party raised the issue of whether Velasquez was subject to custodial interrogation; their arguments focused on only the validity of Velasquez's waiver of rights. We therefore assume, as the parties did at trial, that Velasquez was subject to custodial interrogation such that *Miranda* warnings were required. *Cf. Raess v. Doescher*, 883 N.E.2d 790, 797 (Ind. 2008) ("[A]n objection on grounds other than those raised on appeal is ineffective to preserve an issue for appellate review."); *Bradley v. State*, 248 N.E.3d 563, 573–74 (Ind. 2024) (explaining importance of stating the grounds for an objection with reasonable specificity).

Velasquez had difficulty understanding the form. Velasquez also asserts that "Officer Medrano's summary of the form further indicates an implied reduction of the importance of the form by the officers." *Id.* Again, there is nothing in the hearing record tending to show that Velasquez placed less importance on the form based on Officer Medrano's summary thereof. Velasquez emphasizes Detective Hesher's "movies" statement to argue that he was "trick[ed]" and "cajol[ed]" into waiving his rights. *Id.* at 19. But Velasquez fails to acknowledge that Officer Medrano testified that he "actually didn't interpret" the "movies" statement to Velasquez because "[i]t was irrelevant." Tr. Vol. II at 234. Velasquez further contends that Officer Medrano's answer to his question about needing an attorney was "antithetical to the notion of procedural safeguards as required by *Miranda*." *Id.* Under the totality of the circumstances, we cannot say that Officer Medrano's statement regarding an attorney was so mutually incompatible with *Miranda*'s procedural safeguards as to militate the conclusion that Velasquez did not knowingly and voluntarily waive his rights.

[23] Based on the evidence presented at the hearing on the validity of Velasquez's waiver of rights, we cannot say that he did not knowingly or voluntarily make that waiver. The trial court therefore did not abuse its discretion by admitting into evidence videos of Velasquez's interview.

## 2. The Trial Court Did Not Abuse Its Discretion in Imposing Velasquez's Sentence

[24] Finally, Velasquez argues that the trial court abused its discretion by identifying improper aggravating circumstances when sentencing him. The trial court found the following to be aggravating factors: (1) the "overall circumstances of the offense (committed by force in a public park)"; (2) "the victim was under the age of 12"; (3) "the offense took place in the presence of another child"; and (4) "the harm, injury or loss suffered by the victim is greater than necessary to prove the elements of the offense." Appellant's App. Vol. II at 27. The trial court found the following mitigating factors: (1) Velasquez's "young age of 19," (2) "he has no prior criminal history," (3) "he has family support," and (4) "he is likely to respond to short term incarceration (given minimum weight)." *Id.* at 28. The trial court determined "the aggravating factors outweigh the mitigating factors." *Id.*

[25] We review a trial court's sentencing decision for an abuse of discretion. *Owen v. State*, 210 N.E.3d 256, 269 (Ind. 2023) (quoting *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *as amended* (July 10, 2007), *decision clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007)), *reh'g denied* (Aug. 17, 2023). "An abuse of discretion occurs if the decision is 'clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.'" *Id.* (quoting *Anglemyer*, 868 N.E.2d at 490). "A court does not abuse its discretion if the record supports its reasons for

imposing a sentence and those reasons are proper as a matter of law." *Id.* (citing *Anglemyer*, 868 N.E.2d at 490–91).

[26] Velasquez contends that the trial court erred in considering as aggravators that Velasquez molested J.J.-T. in the presence of A.M. and that the harm, injury or loss suffered by J.J.-T. is greater than necessary to prove the elements of the child molesting as a Level 3 felony. Velasquez does not challenge the trial court identifying as aggravators J.J.-T.'s age or the overall circumstances of the offense, so "we will not remand for resentencing if we can say with confidence the trial court would have imposed the same sentence had it not considered the purportedly erroneous aggravators," *Owen*, 210 N.E.3d at 269–70 (Ind. 2023) (citing *McDonald v. State*, 868 N.E.2d 1111, 1114 (Ind. 2007)).

[27] Regarding the two unchallenged aggravating circumstances, the trial court explained its reasoning as follows:

> You were nineteen years of age. The victim indicated that she told you her age was eleven. That's a far enough difference in years that you should [have] understand, understood what you were doing was absolutely wrong. You should not have had sex with this young girl. . . . She testified that she was placed on the ground in the park and that you held her wrists down. She was scared and it hurt. This unfortunately is a memory that this young girl will have to carry with her for the rest of her life. . . . So, I want you to understand how serious[ly] this court's taking this matter. . . . Not only what I've just said but the fact that this did happen apparently with use of some force. It happened in a public park as the State indicated where people should be able to go and feel safe.

Supp. Tr. Vol. II at 28–29. In discussing the mitigating circumstances, the trial court considered Velasquez's lack of criminal history to be "significant," *id.* at 29, but it gave all the other mitigators minimal weight.

[28] Given the minimal weight the trial court gave to the mitigating factors it identified, we confidently believe it would have imposed the same sentence even if it had considered only the unchallenged aggravating factors. Accordingly, we cannot say the trial court erred in imposing Velasquez's sentence.

## Conclusion

[29] In sum, Velasquez waived for our review his claim that the trial court erroneously excluded evidence regarding J.J.-T.'s alleged oral sexual contact with another person, the trial court did not abuse its discretion by admitting videos of Velasquez's interview with law enforcement, and the trial court did not abuse its discretion in identifying aggravating factors at sentencing. We therefore affirm the trial court on all issues presented.

[30] Affirmed.

Brown, J., and Scheele, J., concur.

ATTORNEYS FOR APPELLANT

Harvey L. Lancaster Jr.
Scott M. Gill
Lancaster Gill, PC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Kelly A. Loy
Section Chief, Criminal Appeals
Deputy Attorney General
Indianapolis, Indiana